Raymond A. PAPAI, Plaintiff,

v.

David Lonn CREMOSNIK, Karen Alton Lonn and Milton N. Zic, Defendants.

DEAN FOODS CO., an Illinois corporation, Plaintiff,

v.

Angelo LORDIS and Penny Lordis, individuals, and Oak Lawn Marketing, Ltd., an Illinois corporation, Defendants.

HALSTED VIDEO, INC., an Illinois corporation, and Joseph Mastro, Plaintiffs,

v.

James GUTTILLO, Paul Guttillo, Carlo Guttillo, Kevin Fitzpatrick and Michael Huels, Defendants.

Nos. 84 C 10433(1), 85 C 6224(2) and 85 C 6890(3).

United States District Court, N.D. Illinois, E.D.

May 30, 1986.

Arnold H. Landis, William H. Pratt, Mark E. Ferguson, Kirkland & Ellis, Stuart Smith, Jean Marie R. Pechette, Gordon & Glickson, Chicago, Ill., for plaintiff.

Howard J. De Pree, Bates, De Pree, Bard & Wilson, Chicago, Ill., for Milton N. Zic.

William D. Klink, Chicago, Ill., for Angelo Lordis.

Benjamin P. Hyink, Drugas, Maione, Morgan & Hyink, Chicago, Ill., for James Guttillo.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Three complaints alleging common law fraud and violations of the Racketeering Influenced and Corrupt Organizations Act (RICO) are pending in this court. Motions to dismiss have been filed in all three cases. Central to each is the question of what constitutes a "pattern of racketeering activity." Because the cases present similar legal issues, and this court has yet to speak on the pleading requirements of the RICO statute since the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the court will address all three cases simultaneously.

### I.

In *Papai v. Cremosnik, et al.,* No. 84 C 10433, the plaintiff alleges that defendants lured him with false promises into investing in a partnership called NOW which they formed to purchase and operate a musical theater business in Phoenix, Arizona. Plaintiff claims that rather than promote the business the defendants took his money for their own use. He invested $45,000 in cash, moved to Phoenix, and worked for the partnership without compensation, all for naught. In an eleven-count complaint plaintiff alleges eight counts of securities fraud and three counts of RICO violations.

The three RICO counts are based on 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d), respectively.[1] For each count the predicate racketeering acts are mail and/or telephone fraud, and the enterprise is the partnership NOW. Plaintiff is not suing the partnership as an entity, but rather sues the individual participants who are all named defendants. Because plaintiff has adequately alleged the enterprise and predicate acts elements of RICO, if he has adequately alleged a pattern of racketeering activity, he has stated a claim under RICO.

In *Halsted Video, Inc., et al. v. James Guttillo, et al.,* No. 85 C 6890, Joseph Mastro, a shareholder but not an officer of Halsted Video, brings a derivative suit on behalf of Halsted Video against the defendants. They are all both shareholders and directors of Halsted Video, except Michael Huels, who is the company's accountant. Plaintiff alleges that defendants (except Huels) skimmed monies which belonged to the company for their own use by falsifying financial documents and failing to report income, and that Huels knowingly prepared the false statements. Plaintiff claims that defendants not only defrauded the company but also perpetuated a scheme to defraud the Internal Revenue Service. The complaint states common and state law

---

**1.** 18 U.S.C. § 1962(b) states:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(c) states:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(d) states:

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (sic) (a), (b), or (c) of this section.

counts of fraud, breach of fiduciary duties, misappropriation of corporate assets, negligence, conspiracy and conversion, and four counts of RICO violations.

The four RICO counts allege violations of 18 U.S.C. § 1962(c) and (d) through mail and wire and telephone fraud. For purposes of § 1962(c), the enterprise is Halsted Video, Inc. and the defendants are persons responsible for conducting the affairs of the enterprise through a pattern of racketeering activity. If plaintiff has stated a pattern, he has stated a claim under RICO.

In *Dean Foods Co. v. Angelo Lordis, et al.*, No. 85 C 6224, plaintiff manufactures and markets dairy and other food products. Defendant Oak Lawn Marketing (Oak Lawn) is a company that distributes Dean Foods products to customers as an independent delivery contractor and also purchases Dean products for resale to Oak Lawn's own customers. Defendants Angelo Lordis and Penny Lordis own 100 per cent of the shares of Oak Lawn. Plaintiff claims that defendants falsified delivery receipts causing Dean to overbill some customers, overpay Oak Lawn, and give it credit for products which it never delivered. Plaintiff brings four common and state law counts for fraud, conversion, unjust enrichment and constructive trust, and one count alleging a RICO violation.

The predicate acts of the RICO count are mail fraud. The enterprise is the association formed by Oak Lawn, Angelo Lordis and Penny Lordis. Unhappily, plaintiff does not specify the subsections of 18 U.S.C. § 1962 on which it relies. Each section has different requirements. In particular, § 1962(c) requires a difference in identity between the person and the enterprise, but § 1962(a) does not.[2] *Haroco, Inc. v. American National Bank and Trust Company of Chicago*, 747 F.2d 384, 400–02 (7th Cir.1984), *aff'd* 473 U.S. ——,

105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *see also B.F. Hirsh v. Enright Refining Company, Inc.*, 751 F.2d 628, 633 (3d Cir.1984). As the court in *Haroco* explained, subsection (a) imposes liability on the enterprise when it is the "direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize or passive instrument of racketeering," in which case subsection (c) applies. *Id.* at 402. Because of these differences a party should state clearly under which subsection he is suing rather than force the courts and the defendant to decide.

■ Plaintiff argues in its brief in opposition to defendants' motion to dismiss that its complaint states a RICO claim under either § 1962(a) or (c). The language of the complaint would comport with § 1962(c) if we assume that Angelo Lordis and Penny Lordis are the "persons" and Oak Lawn is the "enterprise." *See McCullough v. Suter*, 757 F.2d 142 (7th Cir.1985). However, paragraph 12 of the complaint says:

Oak Lawn Marketing is the "alter ego" of Angelo and Penny Lordis. Dean is informed and believes that Angelo and Penny Lordis have operated and do operate Oak Lawn marketing solely for their own pecuniary benefit, and without adequate capitalization. Dean is informed and believes that defendants Angelo Lordis and Penny Lordis have used Oak Lawn Marketing as their agent in perpetuating the wrongful conduct described below. Adhering to the legal fiction that Oak Lawn Marketing is a separate entity would work an injustice upon Dean.

■ Further, the complaint hardly casts Oak Lawn as a victim of the Lordises' racketeering activity. In fact, Oak Lawn is cast as the beneficiary of the Lordises' fraud, which would state a claim under § 1962(a). However, the plaintiff has

---

**2.** 18 U.S.C. § 1962(a) states, in relevant part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of § 2, Title

18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

failed to allege that defendants used "income" derived from their pattern of racketeering activity to conduct Oak Lawn's business. Plaintiff argues that it has so alleged in paragraph 25 of the complaint, which states:

> On information and belief, defendants have wrongfully converted products obtained from Dean ostensibly for delivery to Dean's customers. Specifically, Dean is informed and believes that defendants have sold for their own benefit products claimed to have been delivered to Dean customers. Dean is informed and believes that defendants have sold these fraudulently obtained products to distribution customers of Oak Lawn Marketing and/or other purchasers.

■ A broad definition of income under the statute would include not only money but also fraudulently obtained goods which the business in turn sold. However, paragraph 25 is not incorporated into the RICO count. Because it is unclear whether plaintiff relies on § 1962(a) or (c), the court dismisses the complaint (the RICO count is the only federal claim) with leave to amend to clarify this issue, as well as allege how defendants' acts constitute a "pattern of racketeering activity," *see infra* pp. 1413 to 1414.[3]

## II.

RICO, passed as Title IX of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 941, is a broadly worded statute whose purpose is to provide a private civil remedy to those injured by the infiltration of organized crime into the legitimate business arena. RICO's substantive provision, 18 U.S.C. § 1962, "is violated by any person associated with an enterprise, the activities of which affect commerce, who conducts the enterprise's affairs through a pattern of racketeering activity." *Illinois Department of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir.1985). Each element in a RICO count must be pled

to state a claim, *Sedima*, 105 S.Ct. at 3285; each must also be proved in order to establish liability. *Cf. United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) (while proof used to establish the "enterprise" and the "pattern of racketeering activity" may coalesce, each is a "separate element which must be proved").

Litigants, in an effort to avoid the use of RICO against them, and courts, in an effort to dam the flood of civil RICO cases which on their face look like basic common law breach of contract and fraud cases, have tried to embellish (and thereby narrow) each of the RICO elements. One such effort was the imposition of a "racketeering enterprise injury" requirement on top of the statutory requirement of a showing of injury resulting from an enterprise being conducted through a pattern of racketeering activity. *See, e.g., Alexander Grant & Company v. Tiffany Industries, Inc.*, 742 F.2d 408 (8th Cir.1984). The Supreme Court has rejected this reading of RICO in *Sedima, supra.* An attempt to limit "enterprise" to only "legitimate business enterprises" also failed. *United States v. Turkette, supra.* Likewise, attempts to narrow the concept of "pattern of racketeering activity" to require some stated nexus to organized crime have also failed. *See, e.g., Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 21 (2d Cir.1983), *cert. denied sub nom., Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Schacht v. Brown*, 711 F.2d 1343, 1353–54 (7th Cir.), *cert. denied* 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983). Each time, the courts have determined that the language of the statute does not contain the ambiguities which would support judicial restriction of its key concepts. The Supreme Court noted, with approval, the Seventh Circuit's conclusion that

> [t]here are some ambiguities, to be sure, but the fact that RICO has been applied in situations not expressly anticipated by

---

**3.** Plaintiff has also pled a violation of 18 U.S.C. § 1962(d), which depends on properly pleading

a § 1962(a), (b) or (c) violation.

Congress does not demonstrate ambiguity. It demonstrates breadth.

*Haroco,* 747 F.2d at 398, cited in *Sedima,* 105 S.Ct. at 3287.

Nevertheless, the Supreme Court in *Sedima* did acknowledge that the "pattern" concept in the RICO statute contains unresolved ambiguities and that it is the role of the courts, as well as Congress, to "develop a meaningful concept of 'pattern.'" *Id.* at 3287. The court did not have the question of what constitutes a pattern of racketeering activity before it, so it offered only the following suggestion:

> Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act.

*Id.* at 3285 n. 14.

District courts have "accepted the Supreme Court's invitation to develop a more meaningful concept of pattern," *Agra Gill & Duffus, Inc. v. A.V. Laurins, et al.,* No. 84 C 10420, slip op. at 12 (N.D.Ill. March 13, 1986) [Available on WESTLAW, DCTU database]. The effort to reconcile the purpose of RICO with the "extraordinary uses to which civil RICO has been put," *Sedima,* 105 S.Ct. at 3287, continues on the "pattern" front. This court joins the debate now as the pattern issue has been argued by each defendant in the cases before us in his motion to dismiss.

### III.

#### A. Case Law Defining a Pattern of Racketeering Activity

In its definition section, 18 U.S.C. § 1961(5), RICO provides that:

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

There is very little legislative history explaining this provision. However, in the section-by-section analysis of Title IX, the Senate Committee on the Judiciary, which reported the Act, stated:

> The concept of "pattern" is essential to the operation of the statute. One isolated "racketeering activity" was thought insufficient to trigger the remedies provided under the proposed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense. The target of Title IX is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this fact of continuity plus relationship which combines to produce a pattern.

S.Rep. No. 91–617, 91st Cong., 1st Sess. 158 (1969). Thus, "pattern" has two parts: continuity and relationship.

The case law suggests that the "relationship" part at least requires that the acts of racketeering are related to the operation of the enterprise. *United States v. Sinito,* 723 F.2d 1250, 1261 (6th Cir.1983), *cert. denied* 469 U.S. ——, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); *see also Systems Research, Inc. v. Random, Inc.,* 614 F.Supp. 494 (N.D.Ill.1985). In this sense, the acts are related to each other by having a common purpose, namely the purpose of conducting the enterprise's affairs. *Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986); *Graham v. Slaughter,* 624 F.Supp. 222, 225 (N.D.Ill.1985). *See also United States v. Starnes,* 644 F.2d 673, 678 (7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981) (single objective necessary); *Soper v. Simmons International, et al.,* 632 F.Supp. 244 (S.D. N.Y.1986).

■ The concept of "relationship" can also be interpreted to mean similarity. *See*

*Northern Trust Bank/O'Hare, N.A. v. In-ryco, Inc.,* 615 F.Supp. 828, 829, 831 (N.D. Ill.1985) (" 'pattern' connotes similarity, hence the cases' proper emphasis on relatedness of the constituent acts"). To the extent similarity means similarity of purpose, we agree. However, similarity of acts, *i.e.,* two acts of mail fraud rather than one act of fraud and one act of arson, is not required by the statute. *See United States v. Sinito,* 723 F.2d at 1261.[4]

The "continuity" part of the pattern concept has been much harder to identify and articulate into a useful standard. The most extensive discussion on this issue has probably been in this district.

On one end of the spectrum is Judge Shadur's opinion in *Northern Trust Bank/O'Hare N.A. v. Inryco, Inc., supra.* The case involved kickbacks from a construction subcontract. The two specified racketeering acts were "Inryco's mailing the subcontract to Century and Century's mailing a kickback check to Ranke." *Inryco,* 615 F.Supp. at 833. The court argued that *Sedima* implicitly rejected the "assumption that any two acts automatically spell out a pattern." *Id.* at 832. The court went on to say, "[s]urely the continuity inherent in the term [pattern] presumes repeated criminal *activity,* not merely repeated *acts* to carry out the *same* criminal activity." *Id.* at 831. The court quoted extensively from *United States v. Moeller,* 402 F.Supp. 49 (D.Conn.1975), a pre-*Sedima* case which argued that "pattern" implies acts occurring in different criminal episodes or acts "separated in time and place yet sufficiently related by purpose to demonstrate a continuity of activity," *Moeller,* 402 F.Supp. at 57–58. However, at the end of the opinion the "episode" language was replaced with the concept of "scheme." The court stated that "a single scheme does not appear to represent the necessary 'pattern of racketeering activity.' " *Inryco,* 615 F.Supp. at 833. Due to that statement, the case has since been interpreted

as requiring the allegation of multiple criminal schemes to satisfy RICO's pattern requirement. *See Morgan v. Bank of Waukegan,* 615 F.Supp. 836 (N.D.Ill.1985); *Professional Assets Management, Inc. v. Penn Square Bank, N.A.,* 616 F.Supp. 1418, 1423 (W.D.Okla.1985).

Perhaps the case which stretches a requirement of multiple schemes to its breaking point is *Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986). In that case, a jury found the defendant violated RICO by regularly falsifying reports in order to syphon oil from a single well over a period of time. The Eighth Circuit reversed, on this ground:

> Superior Oil has, however, failed to prove the "continuity" sufficient to form a "pattern of racketeering activity." The actions of Fulmer, Branch, and Nichols comprised one continuing scheme to convert gas from Superior Oil's pipeline. There was no proof that Fulmer, Branch, or Nichols had ever done these activities in the past and there was no proof that they were engaged in other criminal activities elsewhere.
>
> Superior Oil attempted to show that Fulmer, Branch, and Nichols intended to engage in similar gas conversion schemes at other locations. Although it may be that proof of a threat of continuing racketeering activities in the future could, in combination with ongoing acts of racketeering, be sufficient to establish a "pattern of racketeering," we find insufficient proof of such a threat here. Instead, the record reveals one isolated fraudulent scheme. On the facts of this case, we agree with the court's conclusion in *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* . . . .

*Id.* at 257.

On the other end of the spectrum is Judge Bua's opinion in *Systems Research, Inc. v. Random, Inc., supra,* decided almost simultaneously with *Inryco.* That

---

**4.** The similarity of acts requirement would not catch conduct implicated by RICO, for example, the use of arson followed by a threat over the phone to force a company to carry certain prod-

ucts. *See* Blakey, The RICO Civil Fraud Action in Context: Reflections on *Bennett v. Berg,* 58 Notre Dame Law. 237, 271 (1982) (referred to as "RICO Civil Action").

case involved a kickback-type scheme where an employee of an employment agency was receiving a kickback for channeling applicants to an outsider. The court read *Sedima* as requiring that "the predicate acts alleged must be sufficiently related to constitute a pattern and that the acts be of the kind RICO was designed to deter or, more precisely, those listed in the statute." *Systems Research*, 614 F.Supp. at 497. Thus, the court held that:

> In paragraph 24 and 25 of the complaint, plaintiffs allege that on two or more occasions defendants used the mails and the wires to conduct the enterprise involved. Since mail and wire fraud are listed under § 1962 as prohibited activities, and are alleged to be related to the scheme to divert applicants from the plaintiffs, [the pattern] element is satisfied.

*Id.* See also *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1355 (5th Cir.1985); *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167, 1170 (S.D.N.Y.1985). This approach in effect collapses the continuity requirement into the relationship requirement.

■ Between the requirement of multiple schemes at one end of the spectrum and merely multiple acts on the other lies a line of cases requiring multiple "criminal episodes" connected to each other by some sense that the activity was "ongoing". This approach was recently articulated by Judge Getzendanner in *Graham v. Slaughter, supra*. The case involved a partner embezzling funds from another partner over a three-year period. At least twenty acts of embezzlement were involved. The court held that

> to be "continuous," more than sporadic or isolated activity must be alleged. In this court's view, that requires more than a single transaction but not necessarily more than a single scheme. Certainly, a

two-year practice of embezzling funds from a company through otherwise separate transactions constitutes a "pattern of racketeering activity" notwithstanding the fact that the numerous acts arguably comprise a single criminal scheme. In other words, while a RICO claim must involve different criminal episodes, *i.e.*, transactions "somewhat related in time and place," an open-ended scheme may include a sufficient number of independent criminal episodes to satisfy the continuity "factor" of *Sedima.*

\*      \*      \*      \*      \*      \*

> ... The fraud was clearly ongoing....

*Id.* at 225 (citations omitted). This reasoning is followed by Judge Hart in *Agra Gill & Duffus, Inc.*, slip op. at 13,[5] and is supported by Judge McGarr's opinion in *Trak Microcomputer Corporation v. Wearne Brothers*, 628 F.Supp. 1089 at 1096 (N.D. Ill.1985). In fact, Judge Shadur in *United States v. Yonan*, 622 F.Supp. 721 (N.D.Ill. 1985), seems to have backed away from a multiple schemes requirement, if he ever embraced it, towards the "multiple episodes evincing an ongoing practice" standard of *Graham*. Yonan was charged with making ten bribery payments to one person in order to fix ten different lawsuits. While this activity could be characterized as furthering a single scheme, Judge Shadur instead said:

> True enough, Yonan is alleged to have made all his payments to one person.... But the payments were assertedly made to fix a whole series of criminal cases in the Cook County Circuit Court. Those separate acts of bribery ... contrast sharply with the mailing of more than one letter to implement a single kickback scheme (the situation in *Inryco* ).

*Yonan*, 622 F.Supp. at 728.[6]

The line between "scheme" and "episode" is not always a bright one. Judge

---

**5.** Judge Hart in *Agra Gill* defined a "transaction" or "episode" as an act having "independent harmful significance." Slip op. at 13. *Cf. United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1189 (4th Cir.1982). We subscribe to this

approach, although nothing in the three cases before us compels us to so hold.

**6.** We find that the Seventh Circuit's recent opinion in *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985), is in keeping with

Mills, in *Fleet Management Systems, Inc. v. Archer-Daniels-Midland Company, Inc.*, 627 F.Supp. 550 (C.D.Ill.1985), stated that "there must be two or more criminal episodes" because this requirement "provides the required evidence that an organized pattern of criminal activity is involved." *Id.* at 559–60. However, Judge Mills relied on *Inryco* for that statement and further on in the opinion held that:

> "In the case *sub judice*, plaintiff alleges that defendants have committed a number of mail and wire fraud violations in furtherance of a scheme to attain plaintiff's "Compumap" computer information and market it under a different name. These specified acts alone, however, fail to establish the required "pattern of racketeering activity" because only one criminal episode is involved—the alleged scheme to illegally market plaintiff's computer program under a different name. It can be seen that plaintiff's allegations do not give rise to any inference that a criminal enterprise is involved in the alleged fraud. Similarly, a threat of ongoing criminal activity is not apparent from the allegation of this one scheme. Therefore, even assuming the truth of plaintiff's allegations, as we must for the purposes of this motion, the allegations cannot establish the required pattern of racketeering activity."

*Id.* at 560. Because both the scheme and the episode concept can easily slip into a "I know it when I see it" style of discourse, we are reluctant to follow either concept without exploring the public policies implicated by our choice.

## B. Public Policy and the Pattern of Racketeering Activity

The basic policy objective behind all of the RICO opinions is to create a net wide enough to catch organized crime yet narrow enough to avoid federalizing "garden variety" frauds. The Supreme Court, and, to a lesser extent, the Seventh Circuit have implemented this objective via a twofold strategy: a liberal reading of the RICO statute which lets just about all RICO claims survive Rule 12(b)(6) motions to dismiss, coupled with the suggestion to Congress (in part created by the pressure of the increasing number of RICO cases allowed to proceed under a liberal reading of the statute) that it amend the statute. *See Sedima*, 105 S.Ct. at 3287; *Ray v. Karris*, 780 F.2d 636, 645 (7th Cir.1985); *Illinois Department of Revenue v. Phillips*, 771 F.2d at 317; *Haroco*, 747 F.2d at 390–92. This strategy assumes that Congress has struck the appropriate balance between competing concerns,[7] *see* Note, *Civil RICO: The Temptation and Impropriety of Judicial Restriction*, 95 Harv.L.Rev. 1101, 1109 (1982), and that "it is not the judiciary's role to assess the cost and benefits associated with the creation of a dramatically expansive tool for combating organized crime." *Moss v. Morgan Stanley, Inc.*, 719 F.2d at 21 (*quoting Schacht v. Brown*, 711 F.2d at 1343).

It is true that Congress distinctly considered the inclusion of commercial frauds into RICO's structure. As Professor Blakey explains, commercial frauds and violation of antitrust, securities and other regulatory laws were originally excluded from the list of predicate offenses, but, ultimate-

---

this reasoning. Without articulating a standard for RICO's pattern requirement, or even mentioning *Sedima's* concern over the lack of a meaningful "pattern" concept, the court held:
> The defendant's mailing of nine fraudulent tax returns to the Illinois Department of Revenue over a nine-month period constitutes a pattern of racketeering activity as defined in the statute.

*Id.* at 313. The court cited *United States v. Weatherspoon*, 581 F.2d 595, 602 (7th Cir.1978), which held multiple racketeering acts constitute a pattern of racketeering activity. Given the rapid development of RICO case law since

Weatherspoon, however, we do not think it inappropriate to view Phillips in light of the more recent jurisprudence.

7. "... Congress deliberately casts the net of liability wide, being more concerned to avoid opening loopholes through which the minions of organized crime might crawl to freedom than to avoid making garden-variety frauds actionable in federal treble-damage proceedings—the price of eliminating all possible loopholes."
*Haroco*, 747 F.2d at 390.

ly, "Congress decided that 'ordinary commercial frauds' *should* be included in RICO...." Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg,* 58 Notre Dame Law. 237, 253 nn. 47 and 66 (1982) (referred to as "RICO Civil Action").

While RICO's legislative history shows Congress considered the "costs and benefits" of including commercial frauds, current RICO experience strongly suggests that the tradeoffs Congress thought it was making are not the tradeoffs which society is in fact experiencing. In a recent report the ABA found that of the 270 known civil RICO cases at the trial level, only 9 per cent involve "allegations of criminal activity of a type generally associated with professional criminals." *Report of the Ad Hoc Civil RICO Task Force of the ABA Section of Corporation, Banking and Business Law,* 55–56 (1985), as cited in *Sedima,* 105 S.Ct. at 3287 n. 16.

A powerful argument can be made that civil suits against a mob defendant will always be rare. As even Professor Blakey admits, "It is not always wise to sue mob-connected defendants." Blakey, *RICO Civil Action,* 58 Notre Dame Law. at 309 n. 175. Organized crime's use of violence against judicial and prosecutorial officials in the criminal arena is well known. *See id.* at 302 n. 168. There is nothing to indicate that organized crime would not use violence against civil plaintiffs and their attorneys in order to deter these suits. RICO's promise of treble damages loses its appeal in these circumstances. At least one author has commented:

> Second and more fundamentally, Congress should reconsider the efficacy of the private right of action as a means of controlling organized crime. Given organized crime's documented technique of intimidation and retribution, only the most stalwart plaintiff will risk the potentially harsh consequences of initiating a suit for treble damages against a member of La Cosa Nostra. If congressional review of the individuals held liable in civil RICO actions reveals only an insig-

nificant number of organized criminals, Congress should validly determine that the private right of action is simply an ineffective tool for the control of organized crime.

Note, *Civil RICO,* 95 Harv.L.Rev. at 1119. This is not to say that RICO's civil component completely misses its mark. As Professor Blakey points out, civil suits brought after criminal investigations and prosecutions can successfully damage the economic power of organized crime. *See* Blakey, *RICO Civil Action,* 58 Notre Dame Law. at 3112 n. 175.

However, RICO can have an enormous effect on commercial frauds perceived as "white collar crime", and indeed in its design seems to address this problem. The Supreme Court recognized this at least implicitly in *Sedima*:

> The fact that § 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued....
>
>    *    *    *    *    *    *
>
> It is true that private civil actions under the statute are being brought almost solely against such defendants, rather than against the archetypal, intimidating mobster. Yet this defect—if defect it is—is inherent in the statute as written....

*Id.* 105 S.Ct. at 3287 (fn. omitted). We conclude that to the extent RICO is used as a weapon against "white collar crime", this purpose is not contrary to the intent of Congress but is in fact one of the "benefits" Congress saw the Act as providing. *Cf. Bennett v. Berg,* 685 F.2d 1053, 1063 (8th Cir.1982), *cert. denied sub nom. Prudential Insurance Co. v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1985) (the legislative history of the Act suggests that RICO is aimed more broadly at criminal activity in the business world). However, even in the white collar crime area it must be remembered that "[t]he concept of 'pattern' is essential to the operation of the statute," and that it requires "more than

one 'racketeering activity' and the threat of continuing activity to be effective." S.Rep. No. 91–617, *supra.* The pattern requirement should therefore address the twin concerns of creating a net which catches both mob and white collar crimes and resolving the tension between isolated and ongoing activity inherent in interpreting and applying the statute.

Given all these policy considerations, we conclude that requiring plaintiffs to plead and prove multiple criminal schemes—in the sense either of the same scheme being perpetuated on different entities or different schemes inflicted on the same entities—is not in keeping with RICO's purpose. Although multiple schemes clearly evince a threat of continuing activity, requiring proof of a pattern of multiple schemes is a larger loophole for "clever defendants and their lawyers," *Haroco,* 747 F.2d at 390, than Congress intended.

On the other hand, requiring multiple racketeering acts without more does not satisfy the purposes of the Act either. While this concept of the pattern requirement casts the net as widely as possible, too much "isolated" or "sporadic" activity is swept up with activity that evinces a threat of continuing.

Thus, we feel the "pattern" standard should at least require multiple criminal "episodes," *i.e.,* illegal transactions separated in time. This standard would exclude the single transaction: for example, a bribe which involved two fraudulent mailings. *See Exeter Tower Associates v. Bowditch,* 604 F.Supp. 1547 (D.Mass.1985).[8]

■ However, we do not stop at requiring a showing of multiple episodes because this alone does not adequately resolve the tension between isolated and ongoing activity. We find that RICO's purposes are best served by also requiring that, from

the pleadings, a reasonable inference can be made that these episodes were not an aberration in the way a defendant conducted his business. Rather, the pattern made up of multiple episodes must be a regular part of the way a defendant does business and in that sense, ongoing. See *Graham,* 624 F.Supp. at 225. *Cf. Grant v. Union Bank,* 629 F.Supp. 570, 578 (D.Utah 1986) ("a pattern does not consist of two or more *isolated* criminal events ... [but rather] interrelated transactions or episodes"). This focuses the pattern requirement on a defendant's conduct as it is expressed through the predicate acts, rather than on the acts alone.

This approach to the pattern element shades into the RICO requirement that the enterprise be "conducted through" a pattern of racketeering activity. When reviewing the "conduct" element, the court in *United States v. Webster,* 669 F.2d 185 (4th Cir.), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982), noted the tension between isolated and patterned activity inherent in interpreting and applying the statute:

> "Conducted", it is true, signifies repeated, even patterned carrying on of affairs. It may be doubted that an isolated incident amounts to "conduct".

\* \* \* \* \* \*

> Even if the single [act] did not constitute "conduct", the regular and repeated acceptance and relay of messages did.

*Id.* at 187. In other words, the pattern element goes to both the "conduct" and the "racketeering activity" elements in the statute. The court in *United States v. Field,* 432 F.Supp. 55 (S.D.N.Y.1977) came to the same conclusion from a slightly different angle. In discussing RICO's statute

8. As the court in *Exeter Towers Associates,* supra, stated:

Most substantial business transactions involve two or more uses of the mail during negotiations. To hold that two such uses of the mail, in circumstances otherwise satisfying the prerequisites of proof of an offense under the mail fraud statute, are sufficient to constitute

a "pattern of racketeering activity" would be to sweep into federal courts, under RICO, the great majority of actions for fraud in commercial transactions. I conclude that the Supreme Court will not read the RICO statute this broadly, whatever may be the precise terms of the limiting formulation it fashions. *Id.* at 1554.

of limitations provision, 18 U.S.C. § 1961(5), the court stated:

> The language of the Act, which makes a *pattern of conduct* the essence of the crime, "clearly contemplates a prolonged course of conduct."

*Id.* at 59 (emphasis added) (citing *Toussie v. United States*, 397 U.S. 112, 120, 90 S.Ct. 858, 863, 25 L.Ed.2d 156 (1970), a case discussing continuing crimes). The standard for pleading a "pattern" of racketeering activity which we articulate in this opinion is intended to address in a meaningful way the tension in RICO between isolated and patterned activity, and, in doing so, to satisfy the continuity part of the pattern concept.[9]

The standard of "multiple episodes evincing a regular, ongoing course of conduct" not only satisfies the continuity requirement, but also adds needed depth to the multiple episode requirement which by itself seems too superficial a basis on which to judge a RICO claim. Further, proof under this standard will involve questions of fact which will more than likely take RICO cases at least beyond the pleading stage so that the law of the Act can develop in a more meaningful way. *Cf. Bennett v. Berg*, 685 F.2d at 1057–58 (applying Rule 12(b)(6) standards to RICO claim).

## IV.

Applying the "multiple episodes plus ongoing course of conduct" formula, the court determines that two out of the three complaints before it have adequately pled a pattern of racketeering activity. In *Papai v. Cremosnik*, the plaintiff has alleged that defendants used fraudulent means to set up a business: they lied as to its potential profitability, they issued false stock, and they employed plaintiff and then refused to pay him. These allegations clearly establish a course of conduct in that each aspect of defendants' effort relied on fraudulent conduct. Plaintiff has also alleged several separate episodes of fraud, using the mails or wire. *See* paragraphs 22–30 of the complaint.[10]

In *Halsted Video v. Guttillo*, the plaintiff has alleged that defendants falsified corporate records, including accounting records, financial statements and income tax returns (paragraphs 25–29 of the complaint). Further, plaintiff claims that defendants concealed cash receipts derived from every part of the business: membership fees, rentals and sales of video tapes, equipment and accessories, arcade games, late charges and VCR repairs (paragraph 23 of the complaint). Thus, systemic corruption and fraud has been adequately alleged as have multiple episodes of mail fraud (paragraphs 33–34 of the complaint). Further, because plaintiff claims that the defendants not only defrauded him but also perpetuated a scheme to fraud the Internal Revenue Service, multiple criminal schemes in this case have been alleged. Plaintiff

---

**9.** An alternative approach is to require a showing of intent to continue the criminal activities. The court in *Soper* dismissed a case because no such intent was established by the pleadings. Recently the Eighth Circuit applied this same "intent" requirement in overturning a jury award on a RICO count. The court stated:

> Superior Oil attempted to show that Fulmer, Branch & Nichols intended to engage in similar gas conversion schemes at other locations. Although it may be that proof of a threat of continuing racketeering activities in the future could, in combination with ongoing acts of racketeering, be sufficient to establish a "pattern of racketeering," we find insufficient proof of such a threat here. Instead, the record reveals one isolated fraudulent scheme.

*Superior Oil Co.*, 785 F.2d at 257. This approach requires a subjective assessment of the defendants' conduct, whereas the conduct approach could in theory be proved with more objective evidence, as well as evidence of intent to continue. Thus the conduct approach is broader than the intent approach.

**10.** The court at this point makes no comment on the merits of plaintiff's claims but only wishes to remind him that he must prove the fraud he alleges, including proof of specific intent to defraud. Non-performance alone does not permit a finding that defendants never intended to perform. *See Hotel Constructors, Inc. v. Seagrave Corporation*, 574 F.Supp. 384, 387 (S.D.N.Y.1983).

therefore has alleged a pattern of racketeering activity.[11]

 The complaint in *Dean Foods Co. v. Lordis* less clearly alleges that defendants operated their business in a fraudulent manner implemented by multiple episodes of mail and/or wire fraud. The complaint does claim that defendants falsified delivery tickets for several of Dean's customers served by Oak Lawn (paragraph 14 of the complaint), but it is unclear from this whether defendants falsified tickets on a regular rather than sporadic basis. This same deficiency occurs in the complaint's conversion count which is the basis for plaintiff's claim under § 1962(a). Further, plaintiff does not identify how many instances of mail fraud are involved in the complaint, but, rather, alleges "defendants on several occasions have mailed falsified delivery tickets to Dean for processing" (paragraph 21 of the complaint). Because Dean should be able to specifically identify the instances of mail fraud it alleges by identifying the falsified delivery tickets, its complaint does not meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g., Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244, 249 (S.D.N.Y. 1981).

### CONCLUSION

For the foregoing reasons, the motions to dismiss in *Papai,* No. 84 C 10433, and *Halsted Video,* No. 85 C 6890, are denied. The complaint in *Dean Foods* is dismissed without prejudice and with leave to amend.

---

**11.** Defendants argue that plaintiff has not alleged fraud with sufficient particularity according to Fed.R.Civ.P. 9(b). However, we find that in this case, where the time, place and content of the false representation is particularly within the defendants' knowledge, plaintiff need not allege this detail in order to put defendants on sufficient notice of his claims. *See Systems Research, Inc.,* 614 F.Supp. at 497–98.