Gerald S. GIDWITZ and Mixco, Inc., Plaintiffs,

v.

STIRCO, INC., Leroy Stirling and Donald Stirling, Defendants.

STIRCO, INC., Leroy Stirling and Donald Stirling, Third-Party Plaintiffs,

v.

James GIDWITZ, Gerald Gidwitz and Mixco, Inc., Third-Party Defendants.

No. 84 C 1126.

United States District Court, N.D. Illinois, E.D.

Oct. 15, 1986.

As Amended Nunc Pro Tunc Oct. 31, 1986.

Theodore W. Anderson, William Frankel, Roger Stein, Neuman, Williams, Anderson & Olson, Chicago, Ill. (also representing third-party defendants), Marc H. Pullman, Principe & Pullman, P.C., Chicago, Ill., for plaintiffs.

Thomas C. Elliott, Jr., McDougall, Hersh & Scott, Chicago, Ill., Michael G. Voorhees, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, for defendants.

## Memorandum

LEIGHTON, Senior District Judge.

This litigation arose out of a contract dispute. The cause is before the court on three motions: (1) by defendants for summary judgment on Count I of the amended complaint; (2) by third-party defendant James Gidwitz for summary judgment on the third-party complaint; and (3) by counterplaintiffs to join Coster Company as a counterdefendant.

## I

In early 1982, plaintiff Gerald Gidwitz wrote letters to farm machinery companies expressing an interest in buying such businesses. In response to one letter, defendants Donald and Leroy Stirling contacted Gerald Gidwitz regarding the sale of their company, Innovative Implements. In May 1982, Innovative Implements became insolvent and the defendant Stirco Company was formed as a successor corporation; Stirco began manufacturing a feed mixer line that Innovative Implements had manufactured.

Between May 1982 and November 1983, Gerald Gidwitz had numerous communications with defendants concerning the purchase of the feed mixer product line, by his company, the plaintiff Mixco Company. Part of those communications concerned the marketing of a feed mixer; in this regard, defendant Ben Neire was consulted to give his opinion of defendants' mixer and to suggest possible improvements to it. Plaintiffs agreed to pay Neier for his work.

While the parties continued negotiations, one of defendants' feed mixers was delivered to Neier who made certain improvements on the machine. Pursuant to the machine being delivered to Neier, Stirco sent an invoice to plaintiff for payment of it. In October 1983, additional parts for the mixer were sent by defendants to Nei-

er; an invoice for payment was sent to plaintiffs.

In May 1983, the parties discussed an oral agreement whereby plaintiffs would purchase the feed mixer product line for $950,000.00; details of the agreement were to be contained in a subsequent written contract. On November 17, 1983, Jim Stearns, plaintiffs' representative, instructed Neier to cease work on the mixer. The next day, a meeting between the parties was held for the purpose of finalizing the sale. A written agreement contemplated that the Stirlings would sell the mixer product line and the patents connected with it. The machine delivered to Neier, and the parts subsequently delivered to him, were listed as among the assets to be sold. The agreement further contemplated that the Stirlings would be employed by Mixco at salaries of $30,000.00 per year. At the meeting, third-party defendant James Gidwitz, an officer of Mixco, recommended to Gerald Gidwitz that a study be performed in order to calculate the market for the mixer, prior to the sale.

Negotiations broke down and the parties failed to execute the agreement. On November 22, 1983, Neier and the Stirlings assigned their rights in the improved mixer to Stirco. On November 29, 1983, Gerald Gidwitz sent defendants a letter of intent to purchase certain assets of Stirco, including the delivered machine and the invoiced parts. On December 12, 1983, the Stirlings made a counterproposal; they also requested payment of the invoiced parts. On January 12, 1983, while the mixer was still in the possession of Neier, Leroy Stirling informed plaintiffs that the mixer had been repossessed by Stirco. On January 10, 1984, Gerald Gidwitz sent Stirco a check for the mixer and the invoiced parts; defendants returned the check.

In late January 1984, the mixer was sold by the Stirlings to Knight Manufacturing Company. On March 6, 1984, they signed licensing agreements with Knight and Speed King Company. In late March 1984, Donald Stirling and Neier filed a joint patent application on the improved mixer.

Plaintiffs' four-count amended complaint is based on these facts. Count I alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1961 et seq.; Count II, a claim for breach of contract; Count III, a claim for conversion; and Count IV, for wrongful interference with contractual relation. In response, defendants filed a four-count counterclaim and a third-party complaint against James Gidwitz. James Gidwitz in turn filed a counterclaim against the third-party plaintiffs.

## II

Defendants move for summary judgment on Count I; the RICO claim. Their motion can be granted only if no genuine issue of material fact exists and they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of establishing the lack of a genuine issue of material fact. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984).

Section 1964(c) of RICO creates a civil cause of action for "any person injured in his business or property by reason of a violation of § 1962 of this chapter...." A violation of § 1962(c) occurs if defendants "(1) conduct (2) an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).[1] Defendants apparently concede that plaintiffs' pleadings and proof satisfy the first two requirements. However, they argue that the record fails to support a possible finding of either "racketeering activity" or

1. Plaintiffs' complaint does not specify which subsection of § 1962 they rely on when alleging a RICO claim. Each subsection has somewhat different requirements. *Papai v. Cremosnik*, 635 F.Supp. 1402 (N.D.Ill.1986). However, it is apparent from the complaint that the RICO allegations are directed against the individual de-

fendants, Donald and Leroy Stirling, and that the defendant corporation was merely a passive instrument of the activity. Accordingly, the court will assume that plaintiffs premise their RICO claim on § 1962(c). *Haroco v. American National Bank and Trust Co.*, 747 F.2d 384, 399–01 (7th Cir.1984).

a "pattern" of such activity and that no genuine issue of material fact exists as to these issues.

In order to recover at trial plaintiffs must prove the existence of the requisite "racketeering activity" by a preponderance of the evidence. *See, Sedima*, 105 S.Ct. at 3282–83; *United States v. Local 560 of International Brotherhood of Teamsters*, 780 F.2d 267, 279–80 n. 12 (3d Cir.1985). RICO defines racketeering activity as, among other things, an act indictable under the federal mail fraud act. 18 U.S.C. § 1961(1)(B).

▪ The elements of mail fraud are: (1) defendants' participation in a scheme to defraud; and (2) the use of the mails for the purpose of executing the scheme. *E.g. Spiegel v. Continental National Bank*, 790 F.2d 638, 646 (7th Cir.1986) (*citing Pereira v. United States*, 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954)). The question thus becomes, whether there exists a genuine issue of material fact as to plaintiffs' ability to prove by a preponderance of the evidence that defendants engaged in acts of mail fraud.

▪ The record establishes that defendants used the mails in connection with the allegedly fraudulent sale of the feed mixer line. *See e.g.* defendants' group Exhibits D and E. Further, the court concludes that defendants have failed to satisfy their burden of showing that no genuine issue of material fact exists as to the fraudulent nature of the alleged scheme.[2] Accordingly, summary judgment on Count I cannot be granted based on lack of "racketeering activity."

A "pattern" of racketeering activity is defined in the statute as requiring at least two acts of racketeering activity. 18 U.S.C. § 1961(5). This does not mean that two acts always constitute a pattern, but rather that two acts are the required minimum. That is, "while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a pattern". *Sedima*, 105 S.Ct. at 3285 n. 14.

Just what does "form a pattern" has been the topic of much debate since the Supreme Court commented on the issue in *Sedima*. *E.g. Northern Trust Bank/O'Hare N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985); *Systems Research Inc. v. Random Inc.*, 614 F.Supp. 494 (N.D.Ill.1985); Moran, *The Meaning Of Pattern In RICO*, 62 Chi.Kent L.Rev. 139 (1986). In *Papai v. Cremosnik*, 635 F.Supp. 1402 (N.D.Ill.1986), the court discussed the most recent case law on the subject and the public policy issues surrounding the question. The court identified three different ways which post-*Sedima* cases have addressed the issue.

At one end of the spectrum are those cases requiring plaintiffs to plead and prove multiple criminal "schemes" to satisfy the pattern requirement. *See Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986); *Inryco*, 615 F.Supp. at 833. This theory places an unusual burden upon plaintiffs; not only need they prove racketeering activity but also that defendants were involved in more than one criminal scheme. *See generally Graham v. Slaughter*, 624 F.Supp. 222 (N.D.Ill.1985); *Trak Mircomputer Corp. v. Wearne Brother*, 628 F.Supp. 1089 (N.D.Ill.1985). This line of cases has led one commentator to note that such an analysis "ignores the text and policy of RICO. In addition, it frustrates the statute's remedial purposes by preventing victims of racketeering acts from invoking RICO to obtain compensa-

---

**2.** In July 1984, plaintiffs moved for a preliminary injunction; the motion was heard by a magistrate of this court. The magistrate concluded that defendants' repossession and sale of the mixer was lawful and accordingly recommended to the court that plaintiffs' motion for preliminary injunction be denied. Fed.R.Civ.P. 72(a). This court adopted the magistrate's report and recommendation. Defendants rely on the court's action as support for the conclusion that an ultimate finding that they acted fraudulently is "inconceivable." However, findings and conclusions made at the preliminary injunction stage are not binding in latter stages of the proceedings. *Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir.1984).

tion for injuries to their business or property." *Moran, supra* p. 9, at 157–58. At the other end of the spectrum are those cases which place very little burden upon plaintiffs; they require only that the acts of racketeering activity be related and that they be of the kind RICO was designed to deter. *E.g. Systems Research,* 614 F.Supp. at 497.

In between these two extremes, a middle ground has been forged. In this regard, some courts have held that establishment of a pattern requires a showing of multiple criminal "episodes" sufficiently connected to each other; this test does not require multiple "schemes." *Graham,* 624 F.Supp. at 225. "In other words, while a RICO claim must involve different criminal episodes, i.e., transactions, somewhat related in time and place, an open-ended [single] scheme may include a sufficient number of independent criminal episodes to satisfy the continuity factor of *Sedima,* as long as it is ongoing." *Id.* at 225.[3] The multiple episodes must be a regular part of the manner in which defendants conduct their business, rather than isolated criminal events. *Papai,* 635 F.Supp. at 1412.

■ After analyizing the statute's language and the relevant policy issues behind RICO, the court in *Papai* concluded that it is this "multiple episodes plus ongoing course of conduct" standard which best satisfies the meaning and purpose of "pattern." *Id.* at 1413. This court agrees with and adopts the reasoning of *Papai.* Applying the "multiple episodes plus ongoing course of conduct" standard to this case, the court concludes, after reviewing the record, that defendants' motion for summa-

ry judgment on Count I must be granted. Rather than defendants' conduct being ongoing multiple episodes, it is clear that the alleged fraud consists merely of isolated criminal events in order to effectuate a single criminal episode; the sale of the product line. There is nothing to indicate that defendants operate their business in a fraudulent manner implemented by multiple acts of mail fraud. *See Lipin Enterprises Incorporated v. Lee,* 803 F.2d 322, 324 (7th Cir.1986). Accordingly, it appearing that no genuine issue of material fact exists on this issue, and that defendants are entitled to judgment as a matter of law, their motion for summary judgment on Count I of the amended complaint is granted.

### III

■ Defendants filed a four-count, third-party complaint naming James Gidwitz as third-party defendant: Count I alleges breach of contract; Count II, fraud; Count III, appropriation of trade secrets; and Count IV, tortious interference with existing contract or business relations. James Gidwitz moves for summary judgment.[4]

■ James Gidwitz is an officer and director of the plaintiff Mixco. As a general rule, personal liability for a corporation's wrongdoing cannot be imposed upon an individual merely because he is an officer or director of the corporation. *See Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 204, 56 Ill.Dec. 14, 21, 427 N.E.2d 94, 101 (1981); *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 753 (7th Cir.1985).[5] However, exceptions to this rule exist; third-party

---

**3.** In *Sedima,* the Court noted that "the infiltration of legitimate business [by organized crime] normally requires more than one racketeering activity to be effective. It is this continuity plus relationship which combines to produce a 'pattern.'" *Sedima,* 105 S.Ct. at 3285 n. 14 (*quoting* S.Rep. No. 91–617, at 158 (1969)).

**4.** The motion is captioned as one to dismiss, however, the parties have treated it as a motion for summary judgment; the court will also. *Clipper Express v. Rocky Mountain Motor Tariff Bureau Inc.,* 690 F.2d 1240, 1250 (9th Cir.1982); Fed.R.Civ.P. 12(b).

**5.** There is some confusion between the parties on the issue of the governing law regarding these state law claims. Because jurisdiction is based on diversity of citizenship, the conflict of law principles of Illinois apply to this case. *Klaxon Co. v. Stentor Electric Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1944). Illinois conflict principles indicate that Illinois has the most significant relationship with the transaction and accordingly, its law governs. *See Dr. Franklin Perkins School v. Freeman,* 741 F.2d 1503, 1515 n. 19 (7th Cir.1984).

plaintiffs argue that two of those exceptions justify James Gidwitz's liability.

First, separate corporate identity will be disregarded and liability imposed upon the individual if the corporation "is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction fraud or promote injustice." *Main Bank*, 86 Ill.2d at 205, 56 Ill.Dec. at 21, 427 N.E.2d at 101. In those cases, the individual is considered the "alter ego" of the corporation, thereby justifying the disregard of separate corporate existence and imposition of liability on the individual.

Second, liability will be imposed upon the individual if he actively participates in the wrongdoing. *McIntosh v. Magna Systems Inc.*, 539 F.Supp. 1185, 1193 (N.D.Ill.1982) (claim for interference with contractual relations upon showing that individual defendant induced other parties' breach of contract); *Murphy v. Walters*, 87 Ill. App.3d 415, 418, 43 Ill.Dec. 107, 110, 410 N.E.2d 107, 110 (2d Dist. 1980) (claim for fraud upon showing that individual defendant made knowingly false statements); *Fure v. Sherman Hospital*, 55 Ill.App.3d 572, 574, 13 Ill.Dec. 448, 449, 371 N.E.2d 143, 144 (1st Dist.1977) (claim in tort upon showing that individual defendant participated in tortious acts); *Polivka v. Worth Dairy Inc.*, 26 Ill.App.3d 961, 966, 328 N.E.2d 350, 354 (1st Dist.1975) (claim for breach of contract upon showing that individual defendant contracted in his own behalf).

■ In this case, there is nothing in the record to suggest that James Gidwitz exercised the requisite dominant control over Mixco so as to be termed its "alter ego." *See Van Dore Co. v. Future Chemicals and Oil Corp.*, 753 F.2d 565, 570 (7th Cir. 1985). Further, the court concludes, from an examination of the record, that there is nothing to indicate that the recognition of Mixco as a separate entity from James Gidwitz will promote either fraud or injustice. Accordingly, third-party plaintiffs cannot premise his liability on the "alter ego" doctrine.

As to the second basis of liability, actual participation by the individual defendant in the wrongdoing, a review of the record reveals that James Gidwitz had minimal involvement in the contract negotiations between Mixco and Stirco. There is nothing to indicate his active involvement in the alleged breach of contract, fraud, appropriation of trade secrets or tortious interference with business relations. His only relevant involvement concerning the matter centered around his recommendation of a market study on the product feed mixer line prior to the sale of it to Mixco. This recommendation, as with all his involvement, was made in the exercise of his business judgment on behalf of Mixco; nothing indicates otherwise. Accordingly, his liability cannot be premised on this theory. *See McIntosh*, 539 F.Supp. at 1193; *Murphy*, 87 Ill.App.3d at 418, 43 Ill.Dec. at 110, 410 N.E.2d at 110; *Fure*, 55 Ill.App.3d at 574, 13 Ill.Dec. at 449, 371 N.E.2d at 144; *Polivka*, 26 Ill.App.3d at 966, 328 N.E.2d at 354; *see also, George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1333 (7th Cir.1983).

Accordingly, it appearing that no genuine issue of material fact exists and that there is no basis for James Gidwitz's liability, he is entitled to judgment as a matter of law and his motion for summary judgment is granted. Fed.R.Civ.P. 56(c).

## IV

Counterplaintiffs move to join Coster Company as a counterdefendant. Fed.R. Civ.P. 20(a), 19(a). Coster, the parent corporation of Mixco, owns 100% of the stock in Mixco. Rule 20(a) permits joinder of persons defending an action that arises out of the same transaction or occurrence and presents common questions of law or fact. *See generally*, 7 Wright, Miller & Kane, *Federal Practice & Procedure*, § 1652 (1986).

Coster argues that there is no theory on which it could be liable to counterplaintiffs

and therefore concludes that joinder would be improper. However, as already noted, the separate corporate existence of a parent and subsidiary may be disregarded and the parent held liable if the subsidiary "is so controlled and its affairs so conducted that it is a mere instrumentality of [the parent], and it ... appears that observance of the fiction of separate existence, would under the circumstances sanction fraud or injustice." *Main Bank*, 86 Ill.2d at 205, 56 Ill.Dec. at 22, 427 N.E.2d at 101. In such a case, the two are deemed indistinguishable and liability may be imposed upon the parent as the subsidiary's "alter ego." *See id.* at 205, 56 Ill.Dec. at 22–23, 427 N.E.2d at 101–102.

■ In this case, the record reveals that: (1) Mixco and Coster commingle funds and assets; (2) Mixco is undercapitalized; (3) Coster owns 100% of the stock in Mixco; and (4) Coster treats the assets of Mixco as its own. These factors lead the court to conclude that the first requirement of the "alter ego" doctrine has been satisfied. *Van Dore*, 753 F.2d at 570. Further, Mixco's undercapitalization makes it clear that at the time of contract negotiations, Coster was the actual financier of Mixco's interest in the transaction. Thus, observance of a separate corporate existence of the two and allowing Coster to escape liability for the alleged wrongdoing of a company which it was financing, would "promote injustice." *Main Bank*, 86 Ill.2d at 205, 56 Ill.Dec. at 22, 427 N.E.2d at 101. For these reasons, counterplaintiffs' motion to join Coster as a counterdefendant is granted. Fed.R.Civ.P. 20(a).

In summary, defendants' motion for summary judgment on Count I of the amended complaint; third-party defendant James Gidwitz' motion for summary judgment; and counterplaintiffs' motion to join Coster as counterdefendant are granted. The cause will proceed to trial on the remaining three counts of plaintiffs' complaint, on defendants' counterclaim and on third-party defendants' counterclaim.

So ordered.