**Clayton J. GRAHAM, Plaintiff,**

v.

**Jay SLAUGHTER and Janet Slaughter, Defendants.**

No. 84 C 7881.

United States District Court, N.D. Illinois, E.D.

Nov. 27, 1985.

George W. Hamman, Dawn M. Cassie, Hamman & Benn, Chicago, Ill., for plaintiff.

Frances J. Higgins, John J. Verscaj, Bell, Boyd & Lloyd, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action for rescission of a contract and payment of pension funds was removed here from state court approximately

one year ago. The matter is currently before the court on the motion of plaintiff Clayton J. Graham to dismiss the amended counterclaim filed by defendant Jay E. Slaughter. On June 17, 1985, the court entered judgment for plaintiff on his ERISA claim to recover vested pension benefits. The amended counterclaim, which purports to state a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c), is currently the sole basis for federal jurisdiction.

For purposes of the present motion, the court takes all well-pleaded factual allegations of the defendant's counterclaim as true. From sometime before May of 1975 until March of 1984, plaintiff and defendant were co-partners doing business as Leasco, International. On or about May 1975, the parties purchased the assets of TWR Plating Corporation, and formed a corporation called TWR Service Corp ("TWR"), of which they were sole shareholders until 1978. Also on or about May 1975, the parties as shareholders entered into an oral contract among themselves and with TWR which provided that their respective salaries, bonuses and benefits as corporate officers would be equal. During this period, Leasco continued to own the building in which TWR operated its business, some land on which TWR planned to construct a new plant, and other equipment used by TWR.

Commencing on or about May 1980, and continuing through January 1983, Graham embezzled certain funds from TWR and from Leasco in an amount not less than $60,000. The principal mechanism was a series of wire transfers and checks drawn on the account of TWR and Leasco. These checks were issued by Graham, pursuant to his powers as TWR's chief financial officer, and were made payable to himself or to companies which he controlled. The complaint identifies twenty such payments, all of them drawn or negotiated on the account of TWR, and purportedly involving use of the mails or interstate telephone lines in violation of 18 U.S.C. §§ 1341 and 1343, respectively.

Based on the foregoing series of payments as predicate acts of racketeering, Slaughter alleges that Graham conducted the affairs of TWR through a "pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c), and that Slaughter has been injured "by reason of" that violation. Specifically, Slaughter alleges that Graham caused TWR to breach the contract among and between shareholders in that bonuses and benefits were unequal, caused TWR to default on monthly rental payments owed to Leasco, and caused direct loss of partnership income to Slaughter.

On February 21, 1985, in reliance on *Gallagher v. Canon USA*, 588 F.Supp. 108, 110 (N.D.Ill.1984), this court held that defendant could not bring a RICO counterclaim based solely on injuries he suffered as a shareholder of TWR. Mem. Op. and Order at pp. 3–5. This rule has since been adopted by the Sixth Circuit. *Warren v. Manufacturers National Bank*, 759 F.2d 542, 544 (6th Cir.1985). The amended counterclaim rectifies the deficiencies noted in that earlier opinion by making specific allegations that Graham embezzled funds from both TWR and Leasco, and caused direct harm to Slaughter by virtue of the partnership income and the alleged oral contract. While these allegations are somewhat conclusory (none of the alleged wire transfers are drawn on Slaughter's or Leasco's account), the fiduciary relationship between the parties and the allegations of personal loss are sufficient to establish a claim by Slaughter in his individual capacity. *See Buschmann v. Professional Men's Association*, 405 F.2d 659, 662–63 (7th Cir.1969); *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 550 F.Supp. 1199, 1203 (N.D.Ill. 1982).

Plaintiff nonetheless moves to strike ¶ 31 of the Amended Counterclaim for repeating allegations regarding Slaughter's injuries as a shareholder. The court agrees that ¶ 31 alleges injuries which are recoverable only by TWR, not Slaughter directly. The allegations are not so clearly insufficient or unrelated to questions of liability, however, that striking under Rule 12(f) is warranted.

Plaintiff's chief argument for dismissal rests on defendant's purported failure to allege a "pattern" as defined in the Supreme Court decision of *Sedima, S.P.R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In *Sedima*, the Supreme Court held that civil RICO plaintiffs need not plead a prior criminal conviction nor a separate "racketeering injury" before maintaining a private action under § 1964(c). The Court expressed concerns over RICO's expansionary evolution, however, and noted that one reason for the "extraordinary" uses to which civil RICO has been put is "the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" *Id.* 105 S.Ct. at 3287. The Court stated that while the statutory definition requires "at least two acts of racketeering activity," *see* 18 U.S.C. § 1961(5), it would be a mistake to assume that allegations of any two acts are therefore sufficient:

> The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern."

105 S.Ct. at 3285 n. 14 (citing S.Rep. 91–617, 91st Cong., 1st Sess. 158).

The exact impact of *Sedima* on the pleading of civil RICO cases is currently a matter to which numerous federal judges have directed their attention, largely as part of an effort to limit the expansion of civil RICO and to stem its concomitant threat of federal jurisdiction over run-of-the-mill business fraud cases. This court has in fact invited briefing of the "pattern" issue in several cases in order to determine whether these cases truly belong in federal court.

Perhaps the most thorough post-Sedima discussion of the "pattern" issue is that of my colleague Milton Shadur in *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985). In that case, Judge Shadur reviewed earlier Seventh Circuit precedent in light of *Sedima*. For example, in *United States v. Weatherspoon*, 581 F.2d 595, 602 (7th Cir.1978), the Seventh Circuit had held that each mailing in a scheme to defraud is a separate offense for purposes of determining whether an indictment charges a pattern of racketeering activity. In *United States v. Starnes*, 644 F.2d 673, 677–78 (7th Cir. 1981), the Court held that acts taken in furtherance of a single criminal end are sufficiently related to satisfy the "pattern" requirement.

To the extent *Weatherspoon* and *Starnes* imply that multiple mailings in furtherance of a single criminal episode may constitute a pattern, this court agrees with Judge Shadur that such a result is no longer warranted under *Sedima*. In *Inryco*, the complaint specified only two mailings made in connection with a phony subcontract under which kickbacks were later made; the court concluded that these two acts, without any facts from which to infer continuous criminal activity, were plainly insufficient under *Sedima* to establish a "pattern of racketeering activity."

■ Plaintiff, however, interprets *Inryco* also to mandate a conclusion that multiple mailings can never establish a pattern of racketeering activity unless they are used to implement different fraudulent schemes. Such an interpretation, while clearly suggested by dictum in *Inryco*, was rejected by Chief Judge Frank McGarr in *Trak Microcomputer Corporation v. Wearne Brothers*, 628 F.Supp. 1089 (N.D. Ill.1985). Nothing in the legislative history of RICO or the language of *Sedima* compels the conclusion that a "pattern of racketeering" requires a pattern of fraudulent schemes.

■ The court nonetheless agrees with Judge Shadur's analysis in *Inryco* that the term "pattern" connotes not only a relatedness but a multiplicity of events: "the term presumes repeated criminal *activity*, not

merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'" 615 F.Supp. at 831. Where this court differs with *Inryco* is in the implication that a single fraudulent effort or episode should be equated with a single scheme.

■■■ Generally, to be related, the predicate acts of a § 1964(c) claim must involve common perpetrators, methods of commission, victims, or motive. *See Allington v. Carpenter*, 619 F.Supp. 474 (C.D.Cal.1985). To be "continuous," more than sporadic or isolated activity must be alleged. In this court's view, that requires more than a single transaction but not necessarily more than a single scheme. Certainly, a two-year practice of embezzling funds from a company through otherwise separate transactions constitutes a "pattern of racketeering activity" notwithstanding the fact that the numerous acts arguably comprise a single criminal scheme. In other words, while a RICO claim must involve different criminal episodes, i.e., transactions "somewhat separated in time and place," *United States v. Moeller*, 402 F.Supp. 49, 57–58 (D.Conn.1975), an open-ended scheme may include a sufficient number of independent criminal episodes to satisfy the "continuity" factor of *Sedima*. To the extent that *Inryco* implies otherwise, Judge Shadur himself appears to have since rejected that implication. *United States v. Yonan*, 622 F.Supp. 721 (N.D.Ill.1985) (ten bribery payments paid to the same person in order to fix ten separate lawsuits distinguishable from *Inryco*).

■■■ The present complaint alleges over twenty predicate acts stretched out over a two year period. Each of the acts involved the same or similar purpose, thus meeting the "relatedness" requirement. The fraud was clearly ongoing, and involved at least three different third parties: the two corporations controlled by Graham and an advertising agency whose invoices were fraudulently redirected to TWR. Unlike the case in *Inryco*, the predicate acts alleged are not ministerial acts performed in the execution of a single fraudulent transaction, but appear to be independently motivated crimes. Under any reasonable definition of "pattern," the allegations of this complaint would suffice to state a claim under *Sedima*. *Cf. Alexander Grant & Co. v. Tiffany Industries, Inc.*, 770 F.2d 717, 718 n. 1 (8th Cir.1985) ("The number and nature of acts [30 allegations of mail and wire fraud] together with allegations demonstrating their similar purposes, results, participants, victims, and methods of commission bespeak a sufficient 'continuity plus relationship' to satisfy the Supreme Court's concerns in *Sedima*....")

The courts of appeals, even after *Sedima*, have been extraordinarily liberal in sustaining RICO claims on allegations less indicative of ongoing activity than those alleged here. *See, e.g., R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir.1985) (complaint alleging two acts of mail fraud held to state a claim where the alleged acts were "related."); *Illinois Department of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir.1975) (nine monthly mailings of fraudulent state sales tax returns held, without discussion of the pattern issue, to state a RICO claim); *Alexander Grant & Co.*, 770 F.2d at 718 (thirty acts of mail and wire fraud in connection with a single audit.) As noted by the Seventh Circuit in *Phillips*, it is up to Congress, not the courts, to limit the private remedy under RICO: "We can only hope that this decision appears to Congress as the distress flag that it is, and that Congress will act to limit, as only it is empowered to, the statute's application to cases such as the one before us now." 771 F.2d at 317. It would be an abuse of discretion for this court to reject the present RICO claim, involving both repeated and related criminal activity, based on some notion, however justified in policy, that the claim more properly belongs in state court.

Accordingly, the motion to dismiss defendant's counterclaim is denied.

It is so ordered.