**B.J. SKIN & NAIL CARE, INC.**

v.

**INTERNATIONAL COSMETIC EXCHANGE, INC.**

**Civ. No. B–85–612(EBB).**

United States District Court,
D. Connecticut.

Aug. 7, 1986.

Allan B. Winston, Lakeville, Conn., for plaintiff.

Jamie K. Gerard, Nevas, Nevas & Rubin, Westport, Conn., for defendant.

**RULING ON MOTION TO DISMISS**

ELLEN B. BURNS, District Judge.

This case arises out of an October, 1984, sales agency agreement between the plaintiff ("B.J.") and the defendant ("I.C.E.").

Under the agreement, I.C.E. was to market cosmetics manufactured by B.J. I.C.E. agreed to use its sales force to market B.J.'s products, receive payments from retail stores, and turn over these payments to B.J. In return for selling plaintiff's product and performing bookkeeping functions, I.C.E. was to receive commissions from the sales it generated.

At some point in October, 1985, B.J. began to believe that I.C.E. was failing to turn over sums received from retail outlets and commenced this suit. The first two counts are common law claims of conversion and fraud. The third count, and the subject of this motion, is a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* This count alleges that the individual defendants, while associated with an "enterprise" (I.C.E.), conducted that enterprise's affairs through a "pattern of racketeering activity."[1] *See* 18 U.S.C. §§ 1962(c), 1964(c).[2] The alleged racketeering activities appear to be acts of mail and wire fraud, one such act occurring in June, 1985, and the remaining acts all occurring in a three-week period in October, 1985.[3] *See* Amended Complaint, ¶ 24. The complaint alleges that these "predicate acts" establish a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5) (a "pattern of racketeering activity" requires at least two acts of racketeering activity.) The defendants have moved to dismiss the third count for failure to plead that they were involved in a pattern of racketeering activity. Because the complaint fails to establish that these defendants were involved in more than one criminal episode, the motion to dismiss is granted.[4]

## I.

In support of its RICO claim the plaintiff relies heavily upon the Supreme Court's ruling in *Sedima, S.P.R.L. v. Imrex Company, Inc.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiff claims that *Sedima* grants a broad license to plead civil RICO violations whenever a party can point to the commission of two predicate acts. Unfortunately for plaintiff, although *Sedima* gave a broader reading to the civil RICO provisions than had the

---

1. Although the third count does not specify which defendants are alleged to have violated RICO, this circuit has noted that the "enterprise" cannot also be a "person liable under RICO. *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985). Therefore, the court considers the third count to be directed only against the individual defendants.

2. Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1964(c) gives a private right of action to "any person injured in his business or property by reason of a violation of section 1962." This private right of action includes a treble damages remedy plus attorneys' fees.

3. It is unclear whether the "predicate acts" alleged are the various instances of receipt of funds through the mail or the making of telephone calls denying receipt of these funds. The allegations of interstate telephone calls are not pleaded with sufficient particularity to establish predicate acts of wire fraud under the strict pleading requirements of Rule 9(b), F.R.C.P. *See Soper v. Simons International, LTD.,* 632 F.Supp. 244, 248–249 (S.D.N.Y.1986) (Rule 9(b)'s pleading requirements apply to allegations of mail and wire fraud as RICO predicate acts). Paragraph 24 of the complaint alleges that the defendants received several payments through the mails and converted the sums received. Although this paragraph does not explicitly allege that the receipt and conversion of these sums was part of the alleged scheme to defraud, such an understanding may be garnered from the complaint as a whole. Receipt of money through the mail in consummation of a scheme to defraud may be a violation of the federal mail fraud statute, 18 U.S.C. § 1341. *United States v. Regent Office Supply,* 421 F.2d 1174, 1179 (2d Cir.1970). Violation of the mail fraud statute is a RICO "predicate act." 18 U.S.C. § 1961(1). The allegations of mail fraud in paragraph 24 are sufficiently specific to meet the requirements of Rule 9(b). *Cf. Soper, supra* at 250 (plaintiffs must plead scienter and intent to defraud to satisfy Rule 9(b) ).

4. In granting this motion to dismiss the court has accepted all of the allegations contained in the complaint as true. *Cameron v. Fogarty,* 705 F.2d 676, 678 (2d Cir.1983).

Second Circuit, it also chastised the lower courts for allowing RICO to evolve into "something quite different form the original conception of its enactors" by failing "to develop a meaningful concept of 'pattern.'" — U.S. at ——, 105 S.Ct. at 3287. Many courts have heeded this admonition by focusing on the requirements of "continuity plus relationship" of the predicate acts to determine if they establish a "pattern." *Id.* at ——, 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 91–617, p. 158 (1969)).

In *Superior Oil Co. v. Fulmer,* 785 F.2d 252 (8th Cir.1986), the plaintiff had prevailed at trial on a RICO count, alleging and proving that, by committing several acts of mail and wire fraud as part of a scheme to steal gas from plaintiff's interstate pipeline, the defendants had engaged in a pattern of racketeering activity. The court, quoting extensively from Judge Newman's decision in *United States v. Moeller,* 402 F.Supp. 49, 57–58 (D.Conn. 1975), noted that the "common sense interpretation of the word pattern implies acts occurring in *different criminal episodes,* episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity." 785 F.2d at 255, n. 3. (emphasis in original).[5] The Eighth Circuit found support for Judge Newman's common sense approach in *Sedima's* pointed footnote 14. The Supreme Court went out of its way to note that although two predicate acts were *necessary* to establish a pattern of racketeering activity, this did not mean that two such acts were sufficient. Rather, the purpose of RICO was not to target "sporadic" criminal activity or the "isolated offender" but to prevent the infiltration of legitimate businesses by continuing criminal activity. — U.S. at ——, n. 14, 105 S.Ct. at 3285 n. 14.

When viewed in this context it is apparent that RICO's reference to a "pattern" of racketeering activity was directed towards individuals who demonstrate a propensity to engage in continuous or on-going criminal activity rather than isolated acts. While Congress chose to make clear that a "pattern of racketeering activity" *required* the commission of at least two predicate acts, nothing in the statute demonstrates an intent to depart from the ordinary meaning of the word "pattern" by permitting courts to find that two illegal acts committed as part of a single fraudulent scheme are sufficient to impose liability under RICO.

The burgeoning use of RICO in ordinary business fraud litigation demonstrates the absurdity of an expansive concept of "pattern." Nearly all business dealings involve frequent use of telephones and mail. It becomes exceedingly easy for a party who feels injured in a business transaction to point to several telephone calls or letters exchanged as part of the transaction. Such an injured party may believe that his injury resulted from misrepresentations made during these communications. Of course, whether fraud actually occurred is a matter for the trier of fact to determine. But it is difficult to imagine that Congress intended the word "pattern" to be given such an all-encompassing definition that these typical business transactions would be "federalized" by RICO. *See Fleet Management Systems v. Archer-Daniels-Midland Co.,* 627 F.Supp. 550, 555 (C.D. Cal.1986) ("litigators, lured by the prospect of treble damage awards, are now turning

---

5. Judge Newman felt compelled to defy common sense because of an earlier Second Circuit ruling in *United States v. Parness,* 503 F.2d 430 (2d Cir.1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). *Parness* had held that two predicate acts occurring in close temporal proximity were sufficient to establish criminal liability under 18 U.S.C. § 1962(b) (unlawful to acquire an interest in an enterprise through a pattern of racketeering activities). As some courts have noted the vitality of *Parness* has been cast in doubt by *Sedima* wherein the

court noted that RICO was not intended to reach "isolated" or "sporadic" criminal activity. — U.S. at ——, n. 14, 105 S.Ct. at 3285, n. 14. *See Fulmer, supra* at 256; *Frankart Distributors, Inc. v. RMR Advertising,* 632 F.Supp. 1198, 1200, n. 3 (S.D.N.Y.1986) (*Sedima* rejected "pattern" concept of *Parness.*) In any event, *Parness* dealt with the application of section 1962(b) while plaintiff bases its claim on section 1962(c). The Second Circuit has noted that these two sections reach separate and distinct activities. *United States v. Biasucci,* 786 F.Supp. 504 (2d Cir.1986).

to federal courts in garden-variety fraud claims that would in the past have proceeded in state court.") A more sensible view is that Congress used the word "pattern" in its everyday sense to reach those who engage in numerous or continuous fraudulent schemes under the guise of legitimate business.

Most courts which have addressed this question post-*Sedima* have adopted this common-sense approach. Some have required plaintiffs to plead that the defendants have engaged in more than one related criminal episode. *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986); *Clodfelter v. Thuston*, 637 F.Supp. 1034 (E.D. Mo.1986); *Agristor Leasing v. A.O. Smith Corp., Inc.*, 634 F.Supp. 1208 (D.Kan.1986); *Frankart Distributors, Inc. v. RMR Advertising*, 632 F.Supp. 1198, (S.D.N.Y. 1986); *Soper v. Simons Int'l*, 632 F.Supp. 244 (S.D.N.Y.1986); *Medallion T.V. Enterprises, Inc. v. Selec TV, Inc.*, 627 F.Supp. 1290 (C.D.Cal.1986): *Allington v. Carpenter*, 619 F.Supp. 474 (C.D.Cal.1985); *Northern Trust Bank v. Inryco*, 615 F.Supp. 828 (N.D.Ill.1985). Other courts have not gone to the extent of requiring a plaintiff to plead the defendant's involvement in multiple criminal episodes but have still required that the complaint allege an open-ended scheme over an extended period of time so as to demonstrate that the alleged criminal activity is "continuous" rather than isolated. *See e.g. Temporaries, Inc. v. Maryland National Bank*, 638 F.Supp. 118 (D.Md.1986) (communications leading to two fund transfers and a conditional stock transfer agreement over a two-month period insufficient to show "pattern"); *Sheftelman v. Jones*, 636 F.Supp. 263 (N.D.Ga. 1986) (mailings of a false statement to

thousands of investors doesn't establish a "pattern"); *Graham v. Slaughter*, 624 F.Supp. 222 (N.D.Ill.1985) (Twenty acts of embezzlement over two and one-half year period sufficient to show a pattern). *Cf. Alexander Grant & Co. v. Tiffany Industries, Inc.*, 770 F.2d 717 (8th Cir.1985) (allegations of thirty acts of mail and wire fraud sufficient to show continuous nature of scheme). Despite this trend and the Supreme Court's admonition against an expansive definition of "pattern", a few courts have persisted in allowing civil RICO complaints supported by allegations of two or more instances of mail or wire fraud in furtherance of a single fraudulent scheme. *See R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir.1985) (not discussing implications of *Sedima*'s footnote 14; *Trak Microcomputer Corp. v. Wearne Bros.*, 628 F.Supp. 1089 (N.D.Ill. 1985) (disagreeing with *Northern Trust Bank v. Inryco, supra*); *Conan Properties v. Mattel, Inc.*, 619 F.Supp. 1167 (S.D. N.Y.1985) (not discussing footnote 14).

This court finds those decisions requiring plaintiffs to allege multiple criminal episodes to assert a civil RICO claim most persuasive. Such a requirement comports with the common sense meaning of the word "pattern," *see Moeller*, 402 F.Supp. at 57, while fulfilling the Congressional intent of targeting those who infiltrate legitimate business operations through continuing criminal activity.[6] "Where there is only one purpose, one result, one set of participants, one victim, and one method of commission, there is no continuity and therefore no pattern of racketeering activity." *Torwest v. Dick*, 628 F.Supp. 163, 166 (D.Colo.1986).

---

**6.** This congressional intent was noted in the Report of the Ad Hoc Civil RICO Task Force of the ABA Section of Corporation, Banking and Business Law (1985) at 72:

> The "pattern" element of the statute was designed to limit its application to planned, ongoing, continuing crime as opposed to sporadic, unrelated, isolated criminal episodes. The "enterprise" element, when coupled with the "pattern" requirement, was intended by the Congress to keep the reach of RICO focused directly on traditional organized crime and

> comparable ongoing criminal activities carried out in a structured, organized environment.

Quoted in *Sedima*, —— U.S. ——, 105 S.Ct. at 3288 (Powell, J., dissenting). *See also Medallion T.V. Enterprises, Inc. v. Selec TV, Inc.*, 627 F.Supp. at 1296 ("pattern" requirement intended to limit RICO to cases in which predicate offenses are committed in a manner characteristic of a person who commonly commits such crimes).

## II.

 Under the multiple criminal episode approach of *Superior Oil v. Fulmer*, 785 F.2d 252, the complaint fails to allege a civil RICO claim. Essentially, the defendants are accused of engaging in a criminal scheme to defraud the plaintiff by entering into a marketing agreement and converting funds that should have been delivered to the plaintiff. Although this single criminal scheme may have involved a number of separate criminal acts, there are no allegations in the complaint that indicate that this scheme was anything but an isolated or sporadic episode. This scheme, if proven, does not amount to the type of long-term, continuous criminal activity that was the target of RICO. *Sedima*, —— U.S. at ——, n. 14, 105 S.Ct. at 3285, n. 14; *Fulmer*, 785 F.2d at 257, n. 7; *Soper v. Simons Int'l*, 632 F.Supp. at 253; *Northern Trust Bank v. Inryco*, 615 F.Supp. at 833.

The complaint also fails to meet the less burdensome requirement that plaintiff simply plead an "open-ended" and "continuous" scheme. *Temporaries, Inc. v. Maryland National Bank*, 638 F.Supp. at 123. The predicate acts enumerated in the complaint include acts of wire and mail fraud occurring over a three-month period, all but one of which occurred during a three-week period. Unlike the situation in *Graham v. Slaughter*, 624 F.Supp. 222, where the defendant was alleged to have engaged in twenty separate acts of embezzlement over a two-year-plus period, this complaint alleges a short-term scheme in which the defendants simply stopped turning over funds they received on plaintiff's behalf. These transactions were not "somewhat separate in time and place," *United States v. Moeller*, 402 F.Supp. at 58, and did not threaten to continue for an indefinite period. Rather, each transaction was an individual "ministerial act" in a single, simple,

fraudulent scheme.[7] *Soper v. Simmons Int'l*, 632 F.Supp. at 254 (citing *Graham, supra*). Therefore, under either the "multiple criminal episode" approach or the less-exacting "open-ended continuous scheme" approach, the third count fails to state a civil RICO claim.

## III.

The motion to dismiss the third count is granted. Because the defendant Anthony Meade is only named in the third count, he is dismissed as a defendant.

SO ORDERED.

---

7. In its opposing memorandum, plaintiff has argued that it has been thwarted by defendants' opposition to discovery from determining if the defendants have been involved in other similar criminal episodes. If plaintiff does ascertain that the defendants have been involved in multiple criminal episodes, it may certainly apply for leave to amend its complaint. However, Rule 11 precludes a party from asserting a claim unless, after reasonable investigation, counsel determines that the claim is well grounded in fact and law. Under this standard the court cannot permit the RICO count to remain based upon plaintiff's hope that facts may eventually be discovered to support it.