**TECHREATIONS, INC., Plaintiff,**

v.

**NATIONAL SAFETY COUNCIL, et al., Defendants.**

**No. 86 C 1399.**

United States District Court, N.D. Illinois, E.D.

Sept. 12, 1986.

Richard A. Dinnebier, Alison P. Mellor, Richard A. Dinnebier, Inc., Santa Ana, Cal. for plaintiff.

Francis Higgins, D. Daniel Barr, Kenneth E. Rechtoris, Bell, Boyd & Lloyd, Chicago, Ill., for defendants.

**MEMORANDUM OPINION AND ORDER**

GETZENDANNER, District Judge:

Plaintiff Techreations, Inc. has brought a 28–count, 87–page complaint against defendants National Safety Council; National Safety Council Board of Trustees; National Safety Council Board of Directors; National Safety Council Officers; Executive Committee of the National Safety Council; and Senior Staff Members of the Executive Committee of the National Safety Council; I. Charles Gilchrest; I. Charles Maltese; and Thomas Pitts. Many of the counts of the complaint plead various state law theories, but basically the gravamen of the complaint arises out of the defendants' actions in fraudulently inducing the plaintiff into a written contract (subsequently orally modified) which the defendants subsequently breached. Under the contract, plaintiff was to be compensated for the development, installation, and administration of a software system for graduates of the "defensive driving course" in California and, by the oral modification, throughout the country. Count 28 purports to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* This count is directed against only defendants Gilchrest, Maltese, Pitts, and unidentified Senior Staff Members of the Executive Committee of the National Safety Council (collectively the

"RICO defendants"). Counts 1 through 27 are based on state law theories and subject matter jurisdiction for those counts is based on diversity (which is in dispute) and pendent jurisdiction given the federal Count 28. Before the court currently is the motion of the RICO defendants to dismiss Count 28 under Fed.R.Civ.P. 12(b)(6) (failure to state a claim upon which relief can be granted) and Rule 9(b) (failure to plead fraud with particularity). For the reasons stated below, the court grants the motion to dismiss.

For purposes of this motion the court takes all factual allegations and reasonable inferences of the complaint as true. On or about November 26, 1983, plaintiff and the RICO defendants began a series of telephone and mail correspondences as part of an effort to set up a contract between them regarding the plaintiff's provision of computer software services to the RICO defendants. (Complaint at ¶¶ 276–77). Specifically, plaintiff was to develop "a driver improvement management information system" for the defendant National Safety Council. On February 21, 1984, the RICO defendants mailed to plaintiff a document entitled "Call to Bid." (*Id.* at ¶ 278). The RICO defendants made forty fraudulent representations to plaintiff, each of which is enumerated in the complaint. *See id.* at ¶ 278(a) through (nn). Though it is not clear from the complaint, it seems likely that these representations were all part of the "Call to Bid" mailing.

On March 29, 1984, plaintiff received a telephone call from the defendants informing plaintiff that it had been awarded the contract. (*Id.* at second ¶ 277). A draft of the written agreement was mailed and received about this time. (*Id.* at second ¶ 278). In April, 1984, plaintiff received another telephone call from defendants at which time the proposed terms of the agreement were again discussed. Defendants executed the agreement on April 14, 1984 and mailed it to plaintiff. Plaintiff then also executed the agreement at about this same time. (*Id.* at 279–82). Under the written agreement, plaintiff contracted to develop, install, and administer the "management information system" for graduates of the defensive driving course in California. The defendants agreed to pay the plaintiff $1.75 for each student for whom a certificate was issued.

After the contract was fully executed, plaintiff and the RICO defendants had several telephone conversations wherein they entered into an additional oral agreement. Under the oral agreement, which by plaintiff's own allegations was a "modification of [the] original written contract," see Count 18, plaintiff promised the exact same performance but over an expanded geographical region to cover the entire nation. (Complaint at ¶ 283).

The plaintiff took a series of costly steps pursuant to and in reliance on the contract, including creating and delivering the software and procedures manuals, and entering into equipment purchase and real property lease agreements. (*Id.* at ¶ 284). On or about October 17, 1984, the RICO defendants induced the National Safety Council to breach the above-described contracts with plaintiff. (*Id.* at ¶ 290). This was accomplished by mailing a letter to plaintiff terminating the agreement between plaintiff and the National Safety Council. The termination of the contract created an economic benefit for the RICO defendants in that they received a "percentage" of the "budget increase" resulting from the breached contract.

## Legal Discussion

Under the RICO statute, for a defendant to have engaged in conduct prohibited by RICO, she or he must have engaged in "a pattern of racketeering activity." 18 U.S.C. § 1962. Section 1961(5) defines this as "at least two acts of racketeering activity [within ten years]." "Racketeering activity" is itself defined in section 1961(1) to include any act of mail fraud (section 1341) or wire fraud (section 1343). These are often called "predicate acts." The RICO defendants here take the position that, even assuming that separate individual mailings and telephone calls made during the contract discussions constitute separate

acts of mail fraud and wire fraud, the complaint nevertheless does not allege a pattern of racketeering within the meaning of RICO. Given the Supreme Court's pronouncement in the now famous footnote 14 of *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), and this court's line of cases interpreting *Sedima,* starting with *Graham v. Slaughter,* 624 F.Supp. 222, 225 (N.D.Ill. 1985), the court must agree with the RICO defendants.

In the *Sedima* footnote, the Court stated that while it is true that the RICO statutory definition of "pattern" requires at least two acts of racketeering, it is wrong to assume that any two predicate acts alone are sufficient to state a RICO claim. In light of *Sedima,* the lower courts have struggled to carefully define "pattern," and since the Seventh Circuit has not yet clearly spoken on the issue, this court has developed and continues to follow its interpretation of the *Sedima* admonition.

Specifically, I have held that a pattern "requires more than a single transaction" or "criminal episode" but "not necessarily more than a single scheme." *Graham,* 624 F.Supp. at 225. For criminal acts to constitute separate "transactions" or "episodes," they must be "somewhat separated in time and place." *Id.* Mere "ministerial acts performed in the execution of a single fraudulent transaction" and not themselves "independently motivated crimes" do not create a pattern within the meaning of RICO, even though technically each may be a mail fraud violation. *Id.* Moreover, "an open-ended scheme may include a sufficient number of independent criminal episodes" to form a pattern. *Id.* Under this standard, I found in Graham that "a two-year practice of embezzling funds from a company through otherwise separate transactions constitut[ed] a 'pattern of racketeering activity' notwithstanding the fact that the numerous acts arguably comprise a single criminal scheme." *Id.*

This analysis was confirmed and sharpened in *Medical Emergency Services v. Foulke,* 633 F.Supp. 156 (N.D.Ill.1986), where the allegations of the complaint failed to set forth a pattern. In that case I stated that "[m]ultiple mailings in furtherance of a single criminal episode are insufficient to allege a pattern of racketeering under § 1961." *Id.* at 157. "Although numerous mailings [were] alleged in furtherance of the scheme, and assuming that each would constitute a separate offense and a separate predicate act, each mailing did not result in a separate injury or separate transaction. Accordingly, each mailing is not a separate criminal episode." *Id.* at 157. Thus, under *Medical Emergency,* a separate criminal episode is identified by a separate injury and at least two episodes are needed for a pattern.

The court stands by this multiple "episode" test for establishing a pattern. Although it does not have the virtue of precision, it is in my view most consistent with the Supreme Court's teachings in *Sedima.* In an exhaustive survey of recent "pattern" opinions in this district since *Sedima,* my colleague Judge Marvin Aspen has embraced the "episode" test. *See Ghouth v. Conticommodity Services, Inc.,* 642 F.Supp. 1325 (N.D.Ill.1986). Furthermore, *Ghouth* agrees that an "episode" has the identifying feature of "one basic injury" of "independent harmful significance." *Id.* at 1336. *Ghouth* also agrees with the statement in *Graham* that a "pattern" exists if there is more than one "scheme." *Id.* The idea, of course, is that a "scheme" is more elaborate and complex than a criminal episode, and since multiple occurrences of the latter constitute a pattern, then *a fortiori* multiple occurrences of the former do also.

In this case, plaintiff seeks to establish its RICO pattern by contending that it has alleged in its complaint two separate "schemes" to defraud plaintiff. The first scheme consists of the allegedly false representations and promises the defendants made to plaintiff for purposes of creating the written contract between the parties. The scheme is alleged to have involved four mailings and three telephone calls. The second scheme is claimed to be the series of false representations and promises the

defendants made to plaintiff for purposes of inducing the oral modification to the written contract by which the geographical coverage of the contract was extended from California to the entire nation. This scheme allegedly involved three mailings and two telephone calls. Plaintiff further claims that separate injuries arose from the two schemes. The first scheme injured plaintiff in that it suffered development costs, implementation costs, insurance costs, and unrealized profits. The second scheme injured plaintiff in that it suffered further development costs by purchasing a centralized computer for the national system. It also suffered further unrealized profits.

The court must reject the arguments that this case involves two "schemes." Indeed, the written contract and the oral modification do not even constitute two separate transactions or criminal episodes, let alone two schemes. The oral modification to the written contract lacks several critical features of a "criminal episode" separate and distinct from the written contract itself. Thus, this case involves only one episode and no "pattern."

First, the oral modification is not separated in time and place from the written agreement. The written agreement was executed on April 14, 1984. Although the RICO count does not allege on what date the oral agreement was entered into, this information is alleged in a related count. According to Count 18, the "oral agreement" was "entered into ... on or about April 14, 1984." (Complaint at ¶ 180). Obviously, this simultaneity of events is the very antithesis of the separation of time which must distinguish the criminal episodes of a RICO pattern.

Second, there are not multiple, distinct injuries in this case. To be sure, plaintiff has identified certain economic losses which are logically tied to defendants' alleged breach of the oral modification (such as the large computer purchase) and therefore do not derive from the contract as originally written. But this basis for identifying separate injuries has undesirable implications. It suggests that any injury which can be distinguished from another injury on the grounds that it is rooted in a different part of a contract, the terms of which originated in a different mailing, is therefore a separate criminal episode. This ignores the likely possibility that both injuries may occur at the same time and are both substantially related to one another. Thus, under plaintiff's argument for finding separate injuries, the breach of the written contract alone could be argued to consist of several criminal episodes, each one relating to a mailing or telephone call that produced a separate term of the written contract and from which a certain quantity of the injury can be assigned. Significantly, plaintiff makes no such argument even though it seems to be an implication of its position.

A more sensible and contained approach to the idea of separate injuries is to require that they, like the alleged criminal acts themselves, be separated in time and place. See *Ghouth*, at 1337. Here, the supposedly distinct injuries occurred simultaneously. The letter from defendants of October 17, 1984, terminating the written agreement is also the same letter alleged to have terminated the oral agreement. (See Complaint at ¶ 292). This makes perfect sense since the oral agreement was nothing more than a simple modification of the written contract. When the termination letter was received, then and only then did plaintiff suffer any of the injuries for which it now seeks relief. Thus, the injuries here all occurred simultaneously and were therefore not separated in time.

Of course, if a plaintiff is the victim of the breach of two separate contracts on the same day, this may constitute two injuries. But despite plaintiff's legal assertions to the contrary, the oral agreement here does not rise to the level of a separate contract. It relates to only one term (geography) of a somewhat lengthy written contract. The oral agreement is more accurately called an oral modification because it lacks the necessary detail, completeness, and coverage to stand on its own as an enforceable con-

tract. It is understood only in relation to the written agreement and the written agreement is understood only with the addition of the oral modification. Indeed, even the termination letter refers to only one "Agreement," see Ex. B of Complaint, and plaintiff regards this letter as applying to both the written contract and the oral modification. (See *id.* at ¶ 290). Therefore, this case involves one contract with only one distinct injury.

A third and related feature of this case that places it within the rubric of a single criminal episode is the fact that all of the mailings and telephone calls were made in an effort to achieve a complete and single contract. Thus, the seven mailings and five telephone calls made in less than eleven months' time were simply the ministerial acts necessary to accomplish the substantive result of a single agreement. Under *Graham,* such acts do not constitute multiple criminal episodes. Again, the fact that some of the mailings and calls were made for the purpose of achieving a modification of the written contract is not relevant when, as here, the modification was nearly simultaneous with and entirely incorporated within the original contract itself.

Finally, there is no way to construe this complaint as alleging an "open-ended scheme" as present in *Graham. See Graham,* 624 F.Supp. at 225. When a short series of mailings and telephone calls occurs within a relatively short time frame, and the very nature of the mailings and telephone calls indicates that the series of communications will necessarily be of a limited and finite duration, the scheme is not open-ended and will therefore not contain several episodes constituting a pattern. *See Ghouth,* at 1337; *Graham,* 624 F.Supp. at 225. Here, the twelve communications within eleven months were all devoted toward the goal of consummating a single contract. From the first mailing it was apparent that the ensuing series of correspondences would be limited and would have a definite ending. By contrast, the two and one-half years of twenty predicate acts of embezzlement in *Graham* did not have this

self-limiting property. Thus, there were several criminal episodes in *Graham* but only one here. Therefore, for this additional reason, the complaint fails to allege a pattern.

In summary, the plaintiff has failed to allege a "pattern of racketeering activity" within the meaning of RICO and has therefore failed to state a claim under RICO. The contractual transaction of this case, including a written contract and the oral modification, constitute not only one scheme, but only one episode, allegedly criminal. Count 28 of the complaint must be dismissed. This leaves the remaining twenty-seven state law counts.

### Conclusion

Count 28 of the first amended complaint is dismissed for failure to state a claim.

It is so ordered.