**Louis W. LEVIT, Trustee of the Estate of American Wheel and Engineering Co., Inc., Debtor, Plaintiff,**

v.

**Richard E. BRODNER, et al., Defendants.**

**No. 85 C 7196.**

United States District Court, N.D. Illinois, E.D.

Feb. 25, 1987.

Geoffrey G. Gilbert, McBride, Baker, & Coles, Chicago, Ill., for plaintiff.

David N. Missner, Franklin S. Schwerin, Chicago, Ill., for Richard D. Brodner.

Daniel A. Zazove, Stephen T. Bobo, Chicago, Ill., for Thomas Brodner, Kenneth Kysely and Circular Concepts, Inc.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

The plaintiff is the trustee in bankruptcy of American Wheel and Engineering Co., Inc. ("American Wheel"), a company which, until its demise, specialized in the manufacture and sale of plastic caster wheels. He brings this action pursuant to § 549 of the Bankruptcy Act and § 1964 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") to recover assets and collect damages from the defendants for fraudulently diminishing the debtor estate. The defendants have moved to dismiss the RICO count of the complaint and remand the fraudulent transfer of assets count to the bankruptcy court. Barring that, the defendants' joint motion asks that certain defendants be dismissed and certain parts of the complaint be stricken.

### FACTS

The second amended complaint alleges the following facts. In February, 1984, American Wheel filed a petition for relief under Chapter 11 of the Bankruptcy Act. Richard Brodner ("Brodner"), the president and principal shareholder of the company, was designated to perform the duties imposed upon American Wheel, the "debtor in

possession" before the bankruptcy court.[1] During this period, Brodner was paid a salary of $200,000 per year by American Wheel in his capacity as chief operating officer of the company.

Despite his responsibilities to American Wheel, Brodner caused assets of American Wheel to be transferred without consideration to Circular Concepts, Inc., a company which Brodner had "caused ... to be organized" in April, 1984, for the purpose of defrauding American Wheel's creditors. In addition to the physical assets he fraudulently conveyed, Brodner diverted business opportunities the bankrupt enterprise to Circular Concepts. He was aided in this scheme by his son, Thomas Brodner, the titular head and chief operating officer of Circular Concepts, and by Kenneth Kysely, a caster wheel salesman who left American Wheel to work for Circular Concepts.

The company's fiduciary status as debtor in possession ended on March 4, 1985, when the plaintiff here was appointed trustee. By that time, however, the company was destroyed as a result of the defendants' actions. The trustee commenced liquidation proceedings and brought this action for damages.

**Legal Discussion**

### I. *Pattern Problems.*

■ The parties here call upon the court to determine whether the behavior described in the complaint states a claim under the RICO statute. Crucial to this inquiry is whether the actions alleged constitute "a pattern of racketeering activity." According to the statutory definitions, a "pattern" requires "at least" two acts of "racketeering activity." Racketeering activity, in turn, is defined to include any act indictable under federal mail or wire fraud

law or "any offense involving fraud connected with a case under" the Bankruptcy Act. 18 U.S.C. § 1961.

In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court read the pattern requirement as demanding some kind of "continuity plus relationship" between the predicate offenses. In an attempt to give content to the Court's insight, the Court of Appeals has stated that the continuity prong of *Sedima,* which targets ongoing criminal behavior, requires proof of predicate acts that "can fairly be viewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and place.'" *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986), quoting *Graham v. Slaughter,* 624 F.Supp. 222, 225 (N.D.Ill.1985).[2]

*Morgan* concluded that, for purposes of application of these principles, "a factually-oriented standard, not a set rule, best meets the Supreme Court's directive." *Id.* at 977. The relevant factors in determining continuity, the *Morgan* court observed, include the number and variety of predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.* at 975.

This approach is, as the *Morgan* court itself realized, "less than precise." *Id.* at 977. See also *Lipin Enterprises Inc. v. Lee,* 803 F.2d 322, 324 (7th Cir.1986) ("Fortunately, it is not necessary for us to formulate an exact definition of 'pattern' of racketeering activity to dispose of Lipin's complaint"); *Techreations, Inc. v. National Safety Council,* 650 F.Supp. 337 (N.D. Ill.1986); *Ghouth v. Conticommodity Services, Inc.,* 642 F.Supp. 1325, 1336 (N.D.Ill. 1986). A fair and consistent reading of

---

1. In Chapter XI rearrangements, a trustee is not appointed to wind down and distribute the debtor's estate. Rather, the debtor generally remains in possession of its property and carries out the plan of rearrangement under the supervision of the bankruptcy court. Until its discharge by the court, the debtor in possession stands in a fiduciary relationship with the creditors, and has the same powers, duties, and obligations of a trustee. See *Stein v. United Artists Corp.,* 691 F.2d 885, 890, 892–93 (9th Cir.1982).

2. The defendants here do not challenge the relationship among the predicate offenses alleged in the complaint. "Relationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Morgan,* at 975.

RICO therefore demands not only adherence to the *Morgan* factors but also a greater than usual consideration of other courts' treatment of the various fact patterns that have raised the pattern issue. These decisions fall along a continuum which, in turn, helps to illuminate the application of the *Morgan* standard. *See Morgan*, 804 F.2d at 977.

This continuum is defined—as all continuums are—by two extremes. One is characterized by the kind of continuing coercive and fraudulent practices commonly associated with "mobsters" and other forms of organized criminality—the original target of the act. Although *Sedima* made it clear that the RICO statute is not limited to these kinds of facts (or defendants), I agree with Judge Aspen that the "essential purpose [of the law] should not be forgotten." *Ghouth*, 642 F.Supp. at 1335.

At the other extreme is the case of an isolated act of fraud—often having nothing to do with the kind of activities ordinarily brought to mind by the word "racketeering"—in which the predicate acts are "so closely related that they lack the requisite continuity" to form a pattern. *Morgan*, 804 F.2d at 976. The "paradigmatic" example, Judge Cummings noted in *Morgan*, is the case in which one person defrauds another by falsifying a loan application. He observed:

> Even though plaintiff may be able to allege two predicate acts (for example, two mailings that were made at the same time in connection with this single loan transaction), this hypothetical case is really a single transaction occurring at a single point in time, and would fail to meet the pattern requirement. As Judge Aspen has aptly noted in discussing a similar example, "[t]o call this singular criminal event 'continuous' or 'multiple' criminal activity is to stretch these concepts beyond recognition."

*Id.* at 976, quoting *Ghouth*, 642 F.Supp. at 1337 (which noted that under these facts, "one scheme harms one victim once.").

Based on this reasoning, the Court of Appeals dismissed the plaintiff's RICO claim in *Lipin Enterprises v. Lee*, 803 F.2d 322 (7th Cir.1986). There, the buyer of an auto leasing company alleged that other parties participating in the sale each made fraudulent misrepresentations as to the value and assets of the company. Noting that the alleged racketeering acts were "all designed to defraud one victim ... on one occasion," the *Lipin* court found the twelve acts of mail fraud detailed in the complaint insufficient to constitute a pattern of racketeering activity. 803 F.2d at 324.

In contrast, the Court of Appeals found sufficient to constitute a pattern the actions alleged against the defendant in *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985). There, the defendant mailed nine fraudulent monthly sales tax returns to the state. Although not clear from its opinion at the time, the Court of Appeals has since justified its finding of a pattern on these facts because "each tax return was a separate lie and resulted in a separate underpayment, independent of the other lies and underpayments." *Morgan*, 804 F.2d at 976; *Ghouth*, 642 F.Supp. at 2448.

Similarly in *Heritage Ins. Co. v. First Nat. Bank of Cicero*, 629 F.Supp. 1412 (N.D.Ill.1986), I held that the fraudulent diversion of twelve deposits, sent through the mails and earmarked for five escrow accounts, amounted to a pattern of racketeering activity. That decision, however, was a close one. As I hinted in the opinion, had I viewed the fraud "as a single decision to misappropriate escrow funds," I probably would not have found a pattern. Despite the relatively short period of time over which the predicate acts were committed, however, I concluded that because each mailing "instigated a new diversion of funds, and hence a new or separate injury," the scheme should not be viewed as a series of "constituent mailings performed in the execution of a single transaction." 629 F.Supp. at 1417.

Viewed from the perspective of the multiple transaction test as articulated in *Graham*, adopted in *Morgan*, and applied to the fact patterns discussed above, the predicate offenses alleged here by the trustee's

complaint constitute a "pattern of racketeering activity." Since there is admittedly only one scheme involved (the fraudulent transfer of American Wheel's assets), and only one victim (or at least only one party with standing, per my order of January 26, 1986), the question under *Morgan* becomes whether the defendants' actions amount to continuous criminal activity or whether the predicate acts alleged "relate to but a single act" as in *Lipin. Morgan,* at 976.

The events alleged in the complaint span a period of thirteen months (the period from the initial filing of bankruptcy until the appointment of the trustee).[3] The predicate offenses alleged, in addition to rather vague assertions of mail and wire fraud, see Count II, ¶ 10(e) and (f), include Brodner's fraudulent transfer of assets through the various means described in the complaint, his concealment and destruction of books and records of American Wheel, and his perjury concerning these events during a deposition taken by the trustee in connection with the bankruptcy action.

The defendants argue that these acts place this case squarely under *Lipin.* I disagree. Despite the presence of only one scheme and one victim, and putting aside, arguendo, the wire and mail fraud allegations, the predicate acts alleged here constitute legally separate transactions, and each of these acts is considered a separate offense under federal law. *See* 18 U.S.C. § 152. Nor are these the kinds of technical "paper" crimes which the court considered unimportant for continuity purposes in *Lipin.* Rather, these criminal provisions prohibit different kinds of activity undermining the power of the bankruptcy courts. See *Lipin,* 803 F.2d at 325 (Cudahy, J., concurring).

The predicate offenses alleged here are also factually distinct transactions. This would be true even if all the predicate acts involving transfer of assets and destruction of records occurred at the same moment. From any perspective, Brodner's May, 1985, perjury concerning his handling of American Wheel's assets—which occurred several months after he relinquished control of the bankrupt company—constitutes an entirely separate criminal episode implicating a completely different set of interests from those of the trustee: the integrity of the judicial process. Given this allegation, I cannot help but find the complaint sufficiently alleges a "pattern of racketeering activity."

## II. *Participation Problems.*

■ The defendants also argue that the complaint fails to allege that they conducted the affairs of Circular Concepts "through" a pattern of racketeering activity as contemplated by § 1962(c). By this, the defendants mean that the statute only covers racketeering activity constituting "an integral part of the management of the enterprise's affairs." Def. Mem. at 5; Def. Reply at 4. This argument overstates the requirements of the statute and misreads the precedents upon which it is based. The rule, as should be perfectly clear from any of the cases cited by the defendants, is that the person charged with committing racketeering activity must have had at least "some participation in the operation or management of the enterprise itself." *Agristor Leasing v. Meuli,* 634 F.Supp. 1208, 1223 (D.Kan.1986), quoting *Bennett v. Berg,* 710 F.2d 1361, 1364 (8th Cir.), *cert. denied, Prudential Ins. Co. v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

■ Here, such involvement is clearly set forth. According to the complaint, Brodner was responsible for creating Circular Concepts (¶ 8), transferring assets (both real and intangible) to it (¶ 10), controlling it (¶ 10(d)(c)), and managing it (¶ 14(b)). Accordingly, this argument for dismissal is rejected.

## III. *Circular Concepts.*

The defendant correctly asserts that Circular Concepts cannot be both a RICO enterprise and a RICO defendant under

---

**3.** If Brodner's alleged perjury in May, 1985, is included, the scheme spanned a period of fifteen months.

§ 1962(c). Since a careful reading of the complaint makes clear that the plaintiff only names Circular Concepts as a defendant pursuant to § 1961(a), the argument is irrelevant. *See Morgan,* 804 F.2d at 977.

▆ The defendants' contention that Circular Concepts' role in Brodner's fraudulent scheme has not been plead with adequate particularity is also easily disposed of. The complaint alleges that Brodner created Circular Concepts and diverted the bankrupt's assets and business opportunities to it with the result that "Circular Concepts has taken over the business of American Wheel, and [that] American Wheel no longer exists as a going concern." ¶ 9. That Circular Concepts was created by others (here, the Brodners and Kysely) does not render it innocent. On the contrary, I agree with the trustee that the inference that Circular Concepts derived and used income from its ill-gotten business would be "inescapable" even absent the express allegations in the complaint to that effect.

## IV. *Kenneth Kysely and Thomas Brodner.*

▆ Pursuant to § 1962(d) of the RICO statute, the complaint charges Kenneth Kysely and Thomas Brodner with conspiring to violate § 1962(a) and (c) by their participation in Richard Brodner's scheme to defraud American Wheel's estate. Defendants argue that the complaint is "fatally defective" because it fails to plead with particularity the factual basis of the charges against the two alleged conspirators. See F.R.Civ.Pro. 9(b). They also assert that the complaint fails to charge elements necessary to a conspiracy claim. Specifically, the defendants assert, citing *United States v. Melton,* 689 F.2d 679 (7th Cir.1982), that the trustee must show that each of the two alleged conspirators agreed to participate in the affairs of the enterprise through the commission of two or more predicate acts. See Def.Mem. at 8–9.

This latter argument is wrong. The defendants ignore, even after being confronted with it by the trustee, the Court of Appeals' recent, thorough, and controlling discussion of what constitutes a RICO conspiracy. See *United States v. Neopolitan,* 791 F.2d 489, 494–500 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 422, 93 L.Ed.2d 371 and *Messino v. United States,* —— U.S. ——, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). Despite this reluctance to directly address the case, I believe that *Neopolitan* compels dismissal of the conspiracy counts against Kysely and Thomas Brodner. I do not, therefore, consider the Rule 9(b) argument.

*Neopolitan* held that a defendant violates RICO's conspiracy provision when he "enters into an agreement with knowledge that the goal of the conspiracy is the commission of a RICO violation...." *Id.* at 492. In explaining the meaning of such an agreement, the Court of Appeals stated:

> From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements ... an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at last two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise.

*Id.* at 499.

### A. *Thomas Brodner*

▆ The sole allegation in the complaint concerning this defendant states that, during the period when Richard Brodner was running and being paid by the bankrupt American Wheel, Thomas Brodner "became president and chief operating officer of Circular Concepts with knowledge that it was intended to disguise the fact that ... his father was actually managing" the latter company. ¶ 14(b). This language sufficiently alleges Thomas Brodner's agreement to "conduct or participate" in the affairs of the enterprise, Circular Concepts; it does not suggest that he agreed to the

commission, even by someone else, of two criminal acts which might constitute a pattern of racketeering activity. Nowhere in the complaint is it asserted that Thomas Brodner knew of and agreed to his father's fraudulent diversion of assets and business opportunities to Circular Concepts, destruction of American Wheel's books and records, or perjury respecting these events. Indeed, all the complaint says about the son is that he agreed to play a part in his father's creation of a new company "with knowledge that such conduct was intended to injure American Wheel and its creditors." ¶ 13. Since there is no indication that Thomas Brodner agreed to the commission of at least two predicate acts, he is dismissed from this action.

*B. Kenneth Kysely.*

 The allegation against Kysely states that Kysely acted as a salesman, first for the bankrupt company and then for Circular Concepts, "in order to facilitate the fraudulent transfer" of assets between the companies. ¶ 14(a). This was done, says the complaint, "with knowledge that such conduct was intended to injure American Wheel and its creditors." ¶ 13. Assuming Kysely agreed to "conduct or participate" in the affairs of the enterprise, there is no indication in the complaint that he agreed to the commission of crimes constituting a pattern of racketeering activity. At the most, his agreement to only one predicate act is alleged: the fraudulent transfer of American Wheel's business assets. There is simply no indication that Kysely agreed to any of the other predicate offenses, or that the transfer of assets Kysely agreed to could, independent of other acts, be considered "a pattern of racketeering activity." Accordingly, Kenneth Kysely is also dismissed from this lawsuit.

*V. The Mail and Wire Fraud Counts*

The defendants argue that subparagraphs (e) and (f) of paragraph 10 of Count II should be stricken since they fail to allege racketeering activity within the meaning of the RICO statute. By this they mean that the trustee does not allege, "even on a conclusory basis," that the fac-

tual allegations of that part of the complaint constitute criminal conduct, much less racketeering activities. Def.Mem. at 9. This contention is nonsense. Although factually a bit vague (which the defendants do not object to), these subparagraphs— even when read out of context, as the defendants do here—clearly suggest mail and wire fraud violations. Read in context, the defendants' argument quickly reveals itself to be so entirely frivolous that the court is surprised it was ever raised. See the first sentence of ¶ 10; ¶ 11.

### Conclusion

For the reasons stated herein, the defendants' joint motion to dismiss is denied. Defendants Thomas Brodner and Kenneth Kysely, however, are hereby dismissed as parties to this lawsuit.

It is so ordered.